# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

**JOSEPH ASH, JUSTIN BOLTON, and
MATTHEW CRAWFORD,**

     **Plaintiffs,**

**VERSUS**

**FLOWERS FOODS, INC. and
FLOWERS BAKING COMPANY OF
BATON ROUGE, LLC,**

     **Defendants.**

**CASE NO.: 1:21-CV-03566**

**DISTRICT JUDGE,
DAVID C. JOSEPH**

**MAGISTRATE JUDGE,
Joseph H. L. Perez-Montes**

---

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FOR THE CLAIMS OF PLAINTIFF JUSTIN BOLTON

---

## <u>TABLE OF CONTENTS</u>

1. **INTRODUCTION** ........................................................................................... 1

    A. **Defendants' Statements of Undisputed Material Facts ("SUMFs") Should Be Deemed Admitted Because Plaintiff Failed to Specifically Rebut Them.** ................ 1

    B. **Binding Fifth Circuit Case Law Establishes the MCA Exemption Applies.** ........... 3

        *1. That Plaintiff Never Crossed State Lines Doesn't Matter* ............................................ 3

        *2. The Totality of Circumstances Makes Clear That the Requisite Fixed and Persisting Intent Exists* ............................................................................................... 4

        *3. The DOL Report Plaintiff Bolton Cites Only Further Supports That He is Exempt Under the MCA Exemption* .......................................................................................... 7

        *4. The Fact Plaintiff Doesn't Comply with DOT Regulations Doesn't Matter* ............... 8

        *5. Plaintiff's Attempts to Save His Claims under the TCA Fail* ....................................... 9

    C. **Plaintiff Was Exempt Under the Outside Sales Exemption** ..................................... 10

    D. **Plaintiff's LWPA Claims Cannot Survive Summary Judgment** ............................. 12

    E. **Plaintiff Opting Into the *Richard* Collective Action Did Not "Commence" An Action Sufficient To Interrupt Prescription On His LWPA Claim.** ....................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Coil*,
    775 F.3d 279 (5th Cir. 2014) .................................................................3

*Amendee v. Shell Chemical*,
    384 F.Supp.3d 613 (M.D. La. 2019).....................................................13

*Atkinson v. Dolgencorp Inc.*,
    2006 WL 2620078 (W.D. La. Sept. 12, 2006), aff'd, 223 Fed. Appx. 328 (5th
    Cir. 2007) ...............................................................................................1

*Benavidez v. Oil Patch Group, Inc.*,
    2022 WL 2903119 (W.D. Tex. Apr. 14, 2022)...............................9, 10

*Benoit v. Medvance Inst. of Baton Rouge*,
    2011 WL 13349668 (M.D. La. 2011) ..................................................11

*Bilyou v. Dutchess Beer Distribs., Inc.*,
    300 F.3d 217 (2d Cir. 2002)...................................................................3

*Bradford v. GG Distrib.*,
    LLC, 2016 U.S. Dist. LEXIS 32017 (E.D. Tex. Mar. 14, 2016)............5

*Carr v. Air Line Pilots Ass'n, Int'l*,
    866 F.3d 597 (5th Cir. 2017) .................................................................1

*Central Freight v. L.C.C.*,
    899 F.2d 413 (5th Cir. 1990) .................................................................5

*Cunningham v. Circle 8 Crane Servs., LLC,*
    64 F.4th 597 ......................................................................................6, 8

*Doe v. Dallas Indep. Sch. Dist.*,
    220 F.3d 380 (5th Cir. 2000) .................................................................3

*Finn v. Dean Tranp., Inc.*,
    53 F.Supp.3d 1043 (M.D. Tenn 2014)...................................................5

*Ford v. Lincoln Par. Fire Prot. Dist. No. 1*,
    254 So. 3d 44(La. App. 2 Cir. 2018) ...................................................12

*Ford v. Shreveport City Police Dept.*,
    2011 WL 5546917 (W.D. La. 2011) (Hicks, J.) .....................................1

*Hampton v. McDermott Int'l, Inc*.,
   2019 WL 5617025 (W.D. La. 2019) ................................................................. 15

*LaChapelle v. Owens-Illinois, Inc*.,
   513 F.2d 286 (5th Cir. 1975) ........................................................................... 15

*Martine v. Nat'l Tea Co*.,
   841 F. Supp. 1421 (M.D. La. 1993) .................................................................. 14

*Martinez v. Environmental Oil Recovery*,
   2022 WL 98003 (E.D. Tex. Jan. 10, 2022) ......................................................... 9

*Mena v. McArthur's Dairy*,
   352 Fed. Appx. 303, 2009 WL 3004009 (11th Cir. 2009) ................................... 5

*Merchants Fast Motor Lines v. I.C.C.*,
   5 F.3d 911 (5th Cir.1993) .................................................................................. 3

*Quinn v. Louisiana Citizens Property Ins. Corp*.,
   118 So. 3d 1011 (La. 2012) (tolling of state law claims applies only to class
   actions initially filed in the Louisiana state courts) ....................................... 14

*Richard v. Flowers Foods, Inc*.,
   WDLA Case 6:15-cv-02557, Doc. 423 .......................................................... 1, 14

*Rychorcewicz v. Welltec, Inc.*,
   768 Fed.Appx 252 (5th Cir. 2019) (unpublished) ............................................. 9

*S.W.S. Erectors, Inc. v. Infax, Inc*.,
   72 F.3d 489 (5th Cir. 1996) .............................................................................. 3

*Shew v. Southland Corp*.,
   370 F.2d 376 (5th Cir. 1966) ........................................................................ 3, 4

*Siller v. L&F Distribs.*,
   No. 96-40549, 1997 U.S. App. LEXIS 42893 (5th Cir. Feb. 18, 1997)
   (unpublished) ............................................................................................. 4, 5, 7

*Slaughter v. Bd. Of Sup'rs of Southern Univ*.,
   76 So.3d 438 (La. App. 1 Cir. 2011) ............................................................ 12, 13

*Talton v. I.H. Caffey Distributing Co., Inc*.,
   124 F.App'x 760 (4th Cir. 2005) ....................................................................... 5

**Statutes**

I.C.C. ............................................................................................................................. 3

Binding Fifth Circuit Case Law .................................................................................... 3

FLSA ...................................................................................................................................11, 14, 15

La. C.C. art. 3462 ...........................................................................................................................15

La. C.C.P. art. 421 ..........................................................................................................................14

La. C.C.P. art. 852 ..........................................................................................................................15

La. R.S. 23:631(A)(1)(a) .................................................................................................................12

La. R.S. 23:634 ..........................................................................................................................13, 14

La. R.S. 23:635 ...............................................................................................................................12

Motor Carrier Act section ..............................................................................................................11

**Other Authorities**

29 C.F.R. 782.7 ..................................................................................................................................6

29 .C.F.R. § 782.7 .............................................................................................................................4

29 CFR 541.504 ..............................................................................................................................11

29 CFR 541.504(d)(2) .....................................................................................................................11

29 CFR 541.700(a) ..........................................................................................................................10

Collective Action Did Not "Commence" .......................................................................................14

Dep't of Labor Opinion Letter FLSA 1999 WL 1002364 (Feb. 10, 1999) .....................................5

Dep't of Labor Opinion Letter, FLSA 2005-10, 2005 WL 330602 (Jan. 11, 2005).......................5

district, Local Rule 56.2 .................................................................................................................1, 2

Fed. R. Civ. P. 7 ..............................................................................................................................15

Fed. R. Civ. P. 56(c)(1) .....................................................................................................................1

2016 North Carolina *Rehberg* decision..........................................................................................11

Policy Statement, 1992 WL 122949, at *1 .......................................................................................5

Rule 23 ......................................................................................................................................14, 15

## 1.    INTRODUCTION

Plaintiff Bolton ("Plaintiff" or "Bolton")'s Response fails to create any genuine issues of material fact to successfully engage Defendants' evidence to the contrary. *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017), as revised (July 14, 2017) (nonmovant must "identify specific evidence in the record and ... articulate the precise manner in which that evidence supports his or her claim.") And, his attempts to do so with a self-serving declaration, which is contradicted in large part by his extensive prior sworn deposition testimony, must be rejected outright. Defendants' Motion for Summary Judgment ("Defendants' Motion") should be granted accordingly.[1]

### A.    Defendants' Statements of Undisputed Material Facts ("SUMFs") Should Be Deemed Admitted Because Plaintiff Failed to Specifically Rebut Them.

When opposing summary judgment in this district, Local Rule 56.2 provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for the purposes of the motion, unless controverted as required by this rule." And, when Plaintiff doesn't do so with evidentiary proof, those facts are deemed admitted. *Atkinson v. Dolgencorp Inc*., 2006 WL 2620078, at *1 (W.D. La. Sept. 12, 2006), aff'd, 223 Fed. Appx. 328 (5th Cir. 2007) (Defendant's uncontested facts not controverted by Plaintiffs by citation to specific evidence in the summary judgment record are deemed admitted); *Ford v. Shreveport City Police Dept*., 2011 WL 5546917 at *1 (W.D. La. 2011) (same) (Hicks, J.). Here, Plaintiff failed to specifically contest any of Defendants' SUMFs with competent evidentiary proof. *See, e.g.,* Fed. R. Civ. P. 56(c)(1).  Instead, Plaintiff submitted a "Statement of Contested Facts," which does not

---

[1] Plaintiff also cites declarations from all other Plaintiffs under the guise that they are "similarly situated." But this Court has already held they are not. (*Richard v. Flowers Foods, Inc*., WDLA Case 6:15-cv-02557, Doc. 423). They should not be considered.

directly correspond to Defendants' specific SUMFs. Plaintiff's failure to rebut Defendants' SUMFs with specific evidentiary proof renders all such facts admitted. L.R. 56.2.

And, even if the Court finds that Plaintiff's non-responsive "Facts" are sufficient, the "Facts" are mostly only supported by Plaintiff's own self-serving declaration, which contradicts his prior sworn deposition testimony. *See* Defendants' Response to Justin Bolton's Statement of Contested Material Fact, filed as Exhibit 1. For example:

| Plaintiff's Contested Fact | Actual Evidence in the Record |
|---|---|
| Flowers terminated Bolton's employment and access to his Flowers' route. | Bolton sold his territory after being seriously injured in an accident.  (ECF No. 35-2, ¶ 32). He admitted if he were to stop servicing his territory for any reason, he would be financially responsible until he sold the territory.  He agreed that after his bad accident in June 2014, he was financially responsible until he sold the territory.  (ECF No. 35-3, Bolton Dep. 38:9-17). |
| Bolton did not market or sell products. Bolton delivered products, straightened shelves, and otherwise serviced customers along his delivery route, with supervision from Flowers through Area Sales Directors. | Bolton purchased products from Flowers, taking title to them at that time, and sold them thereafter to his customers and was paid based on sales. (ECF No. 35-2, ¶¶ 36, 38). He engaged in various activities to increase his sales on his own. (*Id.* ¶ 40). He determined what products to order for his customers (*Id.* ¶¶ 10-11), and he determined the quantity of products to order for them (*Id.* ¶¶ 10, 25). Bolton also admitted it was "not very often at all" that his sales manager visited him in the field.  (*Id.* ¶ 44). |
| Flowers allowed Bolton to have a helper but required Flowers' approval. Bolton could not meet all of Flowers' demands on his own. | Bolton testified he understood he did not have to service his territory himself and could hire helpers if he wanted.  He chose not to hire any helpers during his distributorship. (ECF No. 35-2, ¶¶ 8-9). |
| Every week Bolton used his personal vehicle to conduct pull ups, perform hot shots, stales, and additional deliveries, which Flowers required. | Bolton agreed he used his Isuzu box truck "every day" and for "all" his deliveries. (ECF 35-3, Bolton Dep. 64:10-13; ECF 35-2, ¶ 31). He testified he used his personal vehicle mostly for pull-ups but when he did use it for deliveries, it was only "[m]aybe three or four |

| | times a month" if one of his customers ran out. (ECF 35-2, ¶ 33). |
|---|---|

Plaintiff's "evidence" must be stricken accordingly and is insufficient to create genuine

issues of material fact. *S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489, 495 (5th Cir. 1996) (a

nonmoving party may not submit a self-serving affidavit to manufacture an issue of fact); *Doe v.*

*Dallas Indep. Sch. Dist*., 220 F.3d 380, 386 (5th Cir. 2000) (a party cannot create "sham" affidavit

to avoid summary judgment).

**B.      Binding Fifth Circuit Case Law Establishes the MCA Exemption Applies.**

Plaintiff's attempts to avoid summary judgment on the MCA exemption also fail outright.

*1.      That Plaintiff Never Crossed State Lines Doesn't Matter*

First, Plaintiff spends pages arguing that because he only serviced customers in Louisiana

and could not be expected to cross state lines, the MCA exemption doesn't apply. Plaintiff is

wrong. *See Allen v. Coil*, 775 F.3d 279 (5th Cir. 2014) (*quoting Songer v. Dillon Res., Inc*., 618

F.3d 467 (5th Cir. 2010)) (emphasis added) ("we have defined "[interstate commerce for purposes

of the MCA] as the actual transport of goods across state lines or the intrastate transport of goods

in the flow of interstate commerce."). *Accord Shew v. Southland Corp*., 370 F.2d 376 (5th Cir.

1966); *Merchants Fast Motor Lines, Inc*. v. I.C.C., 528 F.2d 1042, 1044 (5th Cir. 1976); and ECF

35-1, pgs. 14-17, Page ID# 1355-1358 (and authority cited therein).[2] Courts have consistently held

that the MCA exemption applies when, as here, the individuals drive wholly intrastate routes but

deliver products that were produced out of state in response to specific customer orders, sales

projections, or anticipated needs. In these circumstances, courts routinely find that the products

---

[2] *See also Bilyou v. Dutchess Beer Distribs., Inc*., 300 F.3d 217, 223 (2d Cir. 2002) (*quoting Walling v. Jacksonville Paper Co*., 317 U.S. 564, 568 (1943)) (Plaintiffs also regularly distribute goods in the stream of interstate commerce for purposes of the MCA exemption because they transport goods involved in a "practical continuity of movement" across state lines from the point of origin to the point of destination.)

remain part of a continuous movement in interstate commerce for purposes of the MCA exemption. *Shew*, 370 F.2d at 376-380 (driver who drove intrastate route but delivered products that were ordered and produced by out-of-state producers based on anticipated needs of customers was exempt because the products "originate[d] out of state and [were] part of a continuous movement in interstate commerce."); *Siller v. L&F Distribs.*, No. 96-40549, 1997 U.S. App. LEXIS 42893, at *4-5 (5th Cir. Feb. 18, 1997) (unpublished) (products brewed out of state that were shipped based on distributors' sales projections, and thereafter delivered on an intrastate basis only, remained in stream of interstate commerce for MCA exemption). *See also* fn. 6 below.

     2.     *The Totality of Circumstances Makes Clear That the Requisite Fixed and Persisting Intent Exists*

Next, Plaintiff contends that the requisite fixed and persistent intent doesn't exist because: (1) the products he delivered are ordered and produced pursuant to a "bulk ordering system" that is not based on "specific customer orders"; (2) he didn't allocate products to specific customers, or make arrangements for transportation of the products, until after he received them; and (3) the warehouse is merely a "terminal storage facility." Plaintiff is wrong factually and legally on all fronts. And, his arguments ignore the essential character of the shipment, which is the critical inquiry here. *Siller*, 1997 U.S. App. LEXIS 42893, at *4-5 (quoting *Merchants Fast Motor Lines v. I.C.C.*, 5 F.3d 911, 917 (5th Cir.1993) (whether transportation between two points in the same state constitutes "interstate commerce" under the MCA "depends on the shipment's essential character.").

First, Plaintiff's argument applies an outdated three-part test once used by the ICC, which can be found in 29 .C.F.R. § 782.7. The test used now, including in the Fifth Circuit, is the "totality of facts and circumstances" test outlined in the 1992 ICC Policy Statement. *See* 1992 Policy Statement-Motor Carrier Interstate Transportation, 8 L.C.C. 2d 470, 473 (Surface Transp. Bd.

1992) (attached as Exhibit 2). *See Siller,* 1997 U.S. App. LEXIS 42893, *5 (quoting *Texas v. United States*, 866 F.2d 1546, 1560 (5th Cir. 1989)).[3] Under this newer, governing test, specific customer orders are not required, nor does the shipper need to know the specific destination of the products at the time of shipment. *See* 1992 ICC Policy Statement, 1992 WL 122949, at *1.[4] In *Bradford v. GG Distrib*., LLC, 2016 U.S. Dist. LEXIS 32017, at *4 (E.D. Tex. Mar. 14, 2016), the court correctly applied this test, granting summary judgment for defendants when shipments were based on sales histories alone, rejecting the three-part ICC test Plaintiff advances here. In *Siller,* the Fifth Circuit found the same—that products delivered solely intrastate remained in the stream of interstate commerce for purposes of the MCA when the products were ordered and delivered based on sales projections.[5] *Siller,* 1997 U.S. App. LEXIS, at *6-7. Numerous other courts and DOL opinion letters have concluded the same. *See*, *e.g.,* Dep't of Labor Opinion Letter, FLSA 2005-10, 2005 WL 330602 (Jan. 11, 2005) (fixed and persisting intent can be present even if shipper does not know the ultimate destination of specific shipments if it bases its determination on the total volume to be shipped through the warehouse on projections of customer demand that have some factual basis); *Mena v. McArthur's Dairy*, 352 Fed. Appx. 303, 2009 WL 3004009, at *8-9 (11th Cir. 2009) (ordering based on projection of customer's needs as discerned through past purchases sufficient to sustain exemption).[6]

---

[3] In *Central Freight v. L.C.C.,* 899 F.2d 413, 421 (5th Cir. 1990), the Fifth Circuit noted that the ICC "appears to have implicitly recharacterized the applicable test" from the three-part test to the "totality of circumstances" test. *See also id.* (*citing with approval Armstrong World, Inc. v. I.C.C.,* 2 I.C.C.2d 63, 69 (1986)) (whether transportation between two points in one state is interstate in nature depending on the "essential character of the shipment, which is ascertained from *all the facts and circumstances surrounding the transportation.*")

[4] The first factor supporting continuing movement in interstate commerce is when "the shipper does not know in advance the ultimate destination of specific shipments [but] bases its determination of the total volume to be shipped . . . on projections of customer demand" and noting as one factor insufficient to break the chain of continuity "[t]he shipper's lack of knowledge of the specific, ultimate destination" at the time of shipment.

[5] While *Siller* is unpublished, its reasoning is directly on point and highly persuasive here.

[6] *Talton v. I.H. Caffey Distributing Co., Inc*., 124 F.App'x 760, 765 (4th Cir. 2005) (wholesale beer distributor's operations met the "practical continuity of movement" test where the products shipped to in-state warehouses for delivery were ordered by the defendant to meet the anticipated needs of in-state retailers); Dep't of Labor Opinion Letter FLSA 1999 WL 1002364 (Feb. 10, 1999) (same); *Finn v. Dean Tranp., Inc*., 53 F.Supp.3d 1043 (M.D. Tenn

**Given this established body of case law, Plaintiff's admissions that he would "receive historical sales data for each customer on Flowers' handheld computer and deliver Flowers' products from Flower's [sic] warehouses to Flowers' customers" (ECF No. 40-2, pg. 2, Bolton Declaration, ¶ 5), are fatal to his overtime claim**. Moreover, the facts here are even stronger because Plaintiff admitted that he did order products for specific customers, many of which were produced out of state in response to these orders, by making changes to the suggested orders. (ECF 35-2, ¶¶ 10-11, 27).

Plaintiff's other arguments, that "transportation is only arranged after the products arrive at the warehouse" and that the warehouse is a "terminal storage facility" fail for the same reason— they are based an outdated ICC test that is no longer applicable.[7] Nor do Plaintiff's arguments make any sense. <u>The transportation arrangement—i.e. that products will be delivered shortly after they are produced in response to specific orders and shipped to the distributors— is part and parcel of the entire DSD system under which Plaintiff operates</u>. (ECF No. 35-2, ¶¶ 25-31). Transportation is not arranged only after the products arrive at the warehouse.[8] Nor can Plaintiff credibly contend that the warehouse is a "terminal storage facility" given that he is delivering highly-perishable products that are packed out shortly after their arrival for delivery—which Plaintiff even

---

2014) (exemption was "not a close call" when product was produced in response to customer projections). Copies of all cases are attached as Exhibit 2.

[7]Plaintiff cites several cases, such as *Roche, Cunningham* and *Amaya* to argue that the Fifth Circuit has held courts must afford deference to the DOL regulations. **But none of those cases involved the Fifth Circuit applying the outdated three-part test set forth in 29 C.F.R. 782.7. That is because, in the Fifth Circuit and in multiple other jurisdictions, this outdated test is no longer used.**

[8] Nor does the fact that the products were sold to Plaintiff after arrival at the warehouse break this chain. For one, Plaintiff contends he was a mere deliveryman and an employee who didn't sell products. He cannot now admit he actually bought the products and took title to them just to try to avoid application of the MCA exemption (even though, under the totality of circumstances test, this shouldn't matter), *while at the same time* contend he didn't actually sell anything to avoid the outside sales exemption. Indeed, the other factors under the 1992 test, such as how rapidly the product moves through the warehouse (daily) and whether the shipper has control of the shipments (the company maintains specific tracking logs of the same), also wholly support that the products remain in interstate commerce. ECF No. 35-4, Declaration of Duane Ramon, ¶¶ 19-24.The essential character of the shipment clearly dictates that the products remain in interstate commerce.

acknowledges. Even so, the 1992 ICC test explicitly recognizes that when the "halt in goods is simply a convenient intermediate step in the process of delivering them to their final destination, they remain interstate commerce." *Siller*, 1997 U.S. App. LEXIS 42893, at *5. That is clearly the case here.

Plaintiff cannot ignore the essential character of the shipment, which is the critical inquiry, to avoid summary judgment. [9] Plaintiff's argument regarding "product modification" based on the fact that product is packed out separately after it arrives at the warehouse also fails outright. The 1992 test acknowledges that "repackaging or reconfiguring," such as pack outs, may be performed and does not constitute "processing" or "substantial product modification." *See* factor (2) of ICC test.

3.    *The DOL Report Plaintiff Bolton Cites Only Further Supports That He is Exempt Under the MCA Exemption*

While Plaintiffs have asked the Court for leave to consider a US DOL Report, issued as a result of an investigation involving two other subsidiaries in Georgia, as part of their summary judgment response, if the Court considers this Report, it only supports Defendants' Motion here. **In this DOL investigation, the DOL found no overtime violations at all because "most, if not all, employees working as Sales Representatives, Potential Distributors or Independent Distributors were exempt from overtime under Section 213(b)(1) Motor Carrier exemption."** ECF No. 45-1, p. 15, PLTS003224. Moreover, in reaching this conclusion, the DOL rejected the very argument Plaintiffs make here—that the products distributors delivered did not remain in interstate commerce for purposes of the exemption. Rather, the DOL found that "[t]hese goods do

---

[9] Plaintiff's attempts to rely on the *Rehberg* case also fail. In addition to being a non-binding decision, the court in *Rehberg* denied summary judgment on the MCA exemption based on the potential application of the TCA, noting the lack of clarity in Fourth Circuit law. The court did not find that plaintiffs did not operate in interstate commerce. But Fifth Circuit case law is very clear on this point, and Plaintiffs do not meet their burden under it here.

not come to rest for interstate commerce purposes until they have reached their customer's location." ECF No. 45-1, p. 14, PLTFS0003223.[10]

>    **4.    The Fact Plaintiff Doesn't Comply with DOT Regulations Doesn't Matter**

Next, Plaintiff argues that Flowers/Baton Rouge should be estopped from relying on the MCA exemption because they don't require Plaintiff to comply with DOT regulations. This, too, doesn't matter. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600-601 (5th Cir. Mar. 24, 2023 (applicable inquiry under MCA exemption is only whether Secretary of Transportation has "the *power* to regulate" – not whether the Company actually complied with DOT rules). When faced with the same argument Plaintiffs raised herein, the Fifth Circuit held the "argument both misunderstands the law and misses the point." *Cunningham*, 2023 WL 2624692 at *3. *See also Bilyou*, 300 F.3d at 229 (*citing Levinson v. Spector Motor Serv.*, 330 U.S. 649, 661 (1947)) (rejecting argument that noncompliance with DOT estopped company from asserting MCA exemption because "Section 7 remains inapplicable" whether the company complied with DOT regulations or not.")    Further, Plaintiff is contending he should have been an employee, and employees with Flowers/Baton Rouge, a registered motor carrier, are required to comply with DOT.[11]

---

[10] Plaintiffs also ask the Court to consider a 2011 "Interoffice Memorandum," which discusses complicated revenue recognition principles only applicable between two independent businesses and various generally-accepted accounting principles ("GAAPs"). This document is not relevant here. Moreover, reference to this document in briefing, without any appropriate foundation for the same (none has been made), is highly improper.

[11] Moreover, as an IC, Plaintiff is responsible for his own DOT compliance and was provided with a packet of materials to assist in that regard. *See* Chuck Rich (11/1/17) 30(b)(6) Dep. p. 177, 7-14 (attached hereto as Exhibit 3). Plaintiff's attempts to point to a single letter by a lower-level DOT agent, who applied a mistaken understanding of the law based on inaccurate information, do not establish otherwise. **Plaintiffs wholly ignore the extensive 30(b)(6) deposition testimony on DOT compliance wherein Mr. Rich testified at length about DOT audits to which various subsidiaries and distributors, including in Louisiana, have been subject, the DOT's findings as a result of the first audit that they had to comply with DOT because they were engaged in interstate commerce, and the substantial DOT compliance efforts the company has undertaken following the same.** *See* Chuck Rich (11/1/17) 30(b)6) Dep. 172:11-181:25 (attached as Exhibit 3).

5.    *Plaintiff's Attempts to Save His Claims under the TCA Fail*

Finally, Plaintiff cannot save his claims under the TCA because he fails to provide "*legally cognizable evidence*," for each challenged workweek, that he drove a vehicle with a GWVR of less than 10,001 pounds in interstate commerce. All he provides is a vague statement in his contested facts that he regularly used his personal vehicle for hot shots and additional deliveries, which weighed less than 10,001 pounds (without any evidentiary proof of the same), which contradicts his deposition testimony that he used his box truck "every day" and for "all" his deliveries; he only used his personal vehicle for deliveries "[m]aybe" three or four times a month; and he only used it to deliver small amounts of bread if one of his customers ran out. ECF 35-2, ¶ 33.  <u>This is insufficient in the Fifth Circuit</u>. *See Carley,* 890 F.3d at 580 (reversing jury verdict because plaintiffs never introduced "legally cognizable evidence" demonstrating the vehicle at issue had a GVWR of 10,000 pounds or less); *Rychorcewicz v. Welltec, Inc.,* 768 Fed.Appx 252 (5th Cir. 2019) (unpublished) (website links stating the GVWR data for particular makes and models of vehicles was not competent because it wasn't tied to vehicles that plaintiffs drove); *Benavidez v. Oil Patch Group, Inc*., 2022 WL 2903119, at *3 (W.D. Tex. Apr. 14, 2022) (plaintiff's fuel records and declaration  "containing no dates, no trip lengths, no purposes for such trips, no destinations, or any other specific details regarding the alleged interstate trips were insufficient to raise a question of fact under the TCA exception"). *Martinez v. Environmental Oil Recovery*, 2022 WL 98003 (E.D. Tex. Jan. 10, 2022) (plaintiff's declaration regarding use of his personal vehicle contradicted his deposition testimony and was insufficient to constitute "evidence regarding the existence of or timing for his alleged TCA-eligible activities").[12]  Defendants' Motion should be granted accordingly.

---

[12] Plaintiff Bolton's arguments that the time his helpers worked in their personal vehicles can be used to show he is eligible for overtime under the TCA are wholly unsupported. First and foremost, Bolton did not hire any helpers during

**C.      Plaintiff Was Exempt Under the Outside Sales Exemption**

With regard to the outside sales exemption, Plaintiff only challenges the first prong of the outside sales exemption – whether his primary duty was sales. According to the USDOL, the "primary duty" is the "principal, main, major or most important duty that the employee performs." 29 CFR 541.700(a). Plaintiff admitted that one of his primary obligations was sales and marketing and he understood the more he sold, the more money he would make. (ECF No. 35-2, ¶¶ 36, 40). To maximize his sales, he tried to put out products that people "liked the most" and "sold the most." (*Id.*, ¶ 40). He engaged in various activities to increase his sales such as trying to solicit additional business from existing customers by doing promotions, asking for more end caps, and asking for more shelf space. (*Id.*).

Plaintiff also testified that: (i) he purchased the product from Flowers and sold it to customers at a higher price; (ii) he was paid based on his sales; (iii) he personally ordered product for customers and specifically made a determination of how much product was needed; (iv) he tried to do his best to increase sales; (v) he focused on "what was selling, what wasn't selling"; and (vi) he based product orders on various different factors such as the time of month, the time of the year, weather conditions, holidays, and knowledge of his route. (ECF No. 35-2, ¶¶ 10-11, 36, 39-40). In short, Plaintiff's primary duty was clearly sales under Section 3(k).

Despite his testimony, Plaintiff nonetheless argues he is not covered by the outside sales exemption and did not sell anything at all, relying solely on his own self-serving declaration. For example, Plaintiff argues that he "did not market or sell bakery products" and merely delivered

---

his distributorship. Furthermore, there is no imputation of the TCA exemption by association, especially as each Plaintiff himself has the burden to show, each week that "he worked on a TCA-eligible vehicle, and that he did so on more than a de minimis basis." *Benavidez*, 2022 WL 2903119 at *1 (emphasis added). Nor can Plaintiff point to time he performed pull ups only to meet his burden under the TCA, as he was not delivering product in his vehicle during that time but rather was merely pulling product from the back room that had already been delivered. *See Benavidez*, 2022 WL 2903119, at *6 (plaintiff failed to meet burden that TCA applies because he "has no evidence that he was transporting goods in the flow of interstate commerce" while using smaller vehicles).

product based on historical sales numbers. (*See* ECF No. 40, p. 21).  Plaintiff then takes

contradictory statements from his declaration and cites 29 CFR 541.504(d)(2) and (3). *Id*. But

Plaintiff's testimony expressly contradicts all the arguments he makes, and nearly everything in

his declaration. *See* Ex. 1, Defendants' Response to Matthew Crawford's Statement of Contested

Facts. And, the use of this contradictory cookie-cutter declaration cannot be used to contest these

undisputed facts, especially given that Plaintiff did not specifically controvert any of Defendants'

SUMFs with competent evidentiary proof. His self-serving declaration is not enough. *See Benoit*

*v. Medvance Inst. of Baton Rouge*, 2011 WL 13349668 at *4 (M.D. La. 2011) ("A party cannot

use subsequent declarations to contradict their own sworn testimony or to alter their own

admissions for the purpose of opposing summary judgment and establishing a factual dispute.")[13]

The only other two points of authority upon which Plaintiff purports to rely – 29 CFR

541.504 and the 2016 North Carolina *Rehberg* decision – fare no better. He cannot demonstrate

that Section 504(d)(2) applies because, among other things, he admitted that he directly affected

sales and the amount of sales is determined not by historical sales volume, but by his own orders,

which he regularly modified based upon his business experience expertise to maximize his sales –

so he could make more money. (*See* ECF No. 35-2, ¶¶ 10-11, 36, 40). Similarly, while Plaintiff

did perform some sales promotional activities, it cannot be credibly disputed that "such work was

in furtherance of the driver's own sales efforts." [14]

---

[13] Not only does Plaintiff's deposition testimony contradict his assertions in the brief and his declaration that he didn't "sell" anything, even his own brief contradicts it. For example, in the Motor Carrier Act section of his opposition, Plaintiff states that he "'purchases' the product for his account, reallocates different products and different amounts to each customer … in such a way so as to facilitate his resale to each specific Flowers customer at its specific destination." (ECF No. 40, pp. 12-13). As discussed in fn. 8, **Plaintiff cannot have it both ways. Either he has title to the product and sells it, making sales his primary duty under Section 3(k), or he doesn't sell products or truly have title to them and cannot rely on that argument in the MCA exemption context.**

[14] *Rehberg* is also distinguishable because it relies on a legally invalid standard. See *Rehberg*, 162 F.Supp.3d at 502 (W.D.N.C. 2016) ("In light of the requirement that FLSA exemptions be 'narrowly construed,' Defendants' Motion for Summary Judgment on this issue will be denied.") This standard was overturned by the Supreme Court in *Encino Motorcars*. 138 S.Ct. at 1140. In addition, it bears noting that Plaintiff makes no attempt to distinguish (or even

On the record, in addition to his own contradictory declaration (discussed at length above), Plaintiff cites only general testimony about Flowers/Baton Rouge's national accounts team "build[ing] relationships … to garner access to the market." (ECF No. 40, p. 22). But conspicuously absent from his cited record evidence (other than his contradictory declaration) is evidence Defendants were doing the actual selling of the product, as opposed to simply "garner[ing] access to the market[s]" in which Plaintiff would ultimately sell. (*Id*.)  That is because it doesn't exist.[15]

### D.    Plaintiff's LWPA Claims Cannot Survive Summary Judgment

First, Plaintiff misrepresents the law concerning who bears the burden of proof under the LWPA. (ECF No. 40, p. 28) ("Flowers has the burden for proof to show that these deductions were not illegal."). The only case Plaintiff relies upon, *Batiansila v. Advanced Cardiovascular Systems, Inc*., pertains only to the defense against the imposition of penalty wages based on "good faith." Instead, the burden of proof has always remained with Plaintiff to show that the deductions he is seeking to recoup are "amount[s] then due under the terms of [his] employment." La. R.S. 23:631(A)(1)(a); *see also Ford v. Lincoln Par. Fire Prot. Dist. No. 1*, 254 So. 3d 44, 51(La. App. 2 Cir. 2018) ("The employee has the burden of proving by a preponderance of the evidence the contract of employment and the terms thereof upon which his suit is founded."). Further, the law is well-established that any attempt to cast something as a purported "fine" under La. R.S. 23:635 must be "strictly construed." *See, e.g*., *Slaughter v. Bd. Of Sup'rs of Southern Univ*., 76 So.3d 438, 456 (La. App. 1 Cir. 2011).

---

address) any of Defendants' other cited legal authority demonstrating salesmen like Plaintiff are exempt pursuant to the outside sales exemption. (*See* ECF 35-1, pgs. 21-23 (and authority cited therein)).

[15] Plaintiff also cites to the testimony of Jimmy Woodward. (ECF No. 40, p. 19, n.85.) Woodward left Flowers in approximately 2007 (Woodward 2015 Dep., 59:17-24, 61:11-62:16, 84:4-9 and Woodward Dep. II, 63:14-25 (attached as Exhibit 4)) and has no basis for personal knowledge relevant to this matter.

Plaintiff has plainly not met his burden to show any alleged deductions in this case constitute a "fine" under the requisite "strict construction" of 23:635. In fact, Bolton understood he would be responsible for all business expenses, that he would be charged various fees, and authorized all of the deductions from his weekly settlement. (*See* ECF No. 35-2, ¶¶ 17-18).  In other words, he never received a "fine".

Plaintiff's alternative argument that all such deductions are a "fine" because they amount to an effort by an employer to transfer the cost of doing business to its employees has no basis in law. In support of this argument, Plaintiff only relies on a publication published by Lake Charles attorney Rick Norman, which itself cites no law to support the assertion at issue. (ECF No. 39, pg. 26, n. 138-139).  Even then, Mr. Norman is wrong, as Louisiana case law is replete with examples that a "fine" is both "strictly construed" and only applies to pecuniary penalties even Plaintiff concedes are not at issue here. *See, e.g., Slaughter*, 76 So.3d at 456 ("The cases indicate that when an employee is aware of the employer's policy of authorizing deductions, the amounts deducted pursuant to the known policy have not been considered fines.").  Here, Plaintiff does not claim that any deductions were made: (i) as a penalty; or (ii) without his knowledge, nor can he, as he authorized all such deductions.  (*See* ECF No. 35-2, ¶¶ 16-18). Accordingly, his LWPA claim cannot stand.

Finally, Plaintiff now claims that the portions of the Distributor Agreement allowing for the deductions at issue violate La. R.S. 23:634 as a wage forfeiture agreement. Notably, Plaintiff's opposition to this motion is the first time he has ever advanced such a claim, and thus, the claim can be ignored.  *See, e.g., Amendee v. Shell Chemical*, 384 F.Supp.3d 613, 637 (M.D. La. 2019) ("The law is well-settled that a plaintiff may not rely on new claims raised for the first time in response to a motion for summary judgment.") Regardless, the 23:634 claim has zero merit

13

because, as the plain language of the statute makes unmistakably clear, such a claim could only

apply at termination. La. R.S. 23:634 ("Contract forfeiting wages on discharge unlawful.").

> E.     **Plaintiff Opting Into the *Richard* Collective Action Did Not "Commence" An Action Sufficient To Interrupt Prescription On His LWPA Claim.**

The parties do not appear to dispute that the Louisiana courts do not apply cross-

jurisdictional tolling. As a result, Plaintiff, a former putative Rule 23 class member in the *Richard*

case (but not a named plaintiff), is not subject to *American Pipe* tolling of the LWPA claims from

the *Richard* case, because it was not initially filed in Louisiana state court. *See Quinn v. Louisiana*

*Citizens Property Ins. Corp*., 118 So. 3d 1011, 1019 (La. 2012) (tolling of state law claims applies

only to class actions initially filed in the Louisiana state courts). In attempting to save his LWPA

claim, Plaintiff now argues that his opt-in for purposes of the FLSA claim in *Richard* also

suspended prescription for purposes of his LWPA claim (asserted on a Rule 23 class basis in

*Richard*) despite the absence of *American Pipe* tolling the statute of limitations for Rule 23 putative

class members.

Plaintiff's argument cannot stand for multiple reasons. First, Plaintiff's FLSA consent form

says nothing about any LWPA claims – and exclusively mentions the FLSA overtime claims.

*Richard* ECF No. 192-1 ("I hereby consent to make a claim under the [FLSA] … to recover

overtime wages."). Second, the filing of the opt-in form does not qualify as the "commencement"

of an action under Louisiana law, so as to interrupt prescription. Louisiana law defines

"commencement" of a civil action as "the filing of a pleading presenting the demand to a court of

competent jurisdiction." La. C.C.P. art. 421; *Martine v. Nat'l Tea Co*., 841 F. Supp. 1421, 1422

(M.D. La. 1993) ("In Louisiana, an action is commenced by the filing of a pleading presenting a

demand to a court of competent jurisdiction.") (citing *De La Vergne v. De La Vergne*, 479 So.2d

549, 550 (La.App. 1st Cir.1985)). A notice of consent to opt into an overtime collective action

does not constitute a pleading under either Louisiana or Federal Rules of Civil Procedure. La. C.C. art. 3462; La. C.C.P. art. 852;  Fed. R. Civ. P. 7.

Lastly, Plaintiff's claim that his opting into the FLSA collective action somehow interrupted prescription on the LWPA claim asserted as a class action ignores that FLSA collective actions and Rule 23 class actions are two completely different statutory schemes with "irreconcilable differences." *See, e.g., LaChapelle v. Owens-Illinois, Inc*., 513 F.2d 286, 288 (5th Cir. 1975) ("There is a fundamental, irreconcilable difference between the class action described in Rule 23 and that provided for by the FLSAs 16(b)."); *see also Hampton v. McDermott Int'l, Inc*., 2019 WL 5617025 at *5 (W.D. La. 2019) (citing *LaChapelle*, 513 F.2d at 289).  Here, Plaintiff did not commence his LWPA claim against Flowers until he filed this present action in October of 2021, more than seven years after he terminated his Distributor Agreement. Accordingly, because there is no dispute that *American Pipe* tolling does not apply to his LWPA claims, Plaintiff's LWPA claim has prescribed.

Respectfully submitted, this 8th day of May, 2023.

/s/C. Garner Sanford, Jr.
C. Garner Sanford, Jr. (*pro hac vice*)
GA Bar No. 005020
OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.
One Ninety One Peachtree Tower,
191 Peachtree St., N.E., Suite 4800
Atlanta, GA 30303
Telephone: 404-870-1714
Email:  garner.sanford@ogletree.com

/s/ Andrew J. Halverson
Andrew J. Halverson (La. Bar No. 31184)
OGLETREE, DEAKINS, NASH, SMOAK
    & STEWART, P.C.
325 Settlers Trace Blvd., Suite 201

15

Lafayette, LA 70508
Telephone:  337.769.6582
Facsimile:  337.989.0441
Email:andrew.halverson@ogletree.com

Counsel for Defendants

**Certificate of Service**

I HEREBY CERTIFY that a copy of the above and foregoing document has this date been served to all known counsel of record in this proceeding by:

(     )      Hand Delivery             (     )      Prepaid U.S. Mail

(     )      Facsimile                   (     )      Federal Express

(     )      E-Mail                       (   X   )      CM/ECF System

Atlanta, Georgia, this 8th day of May, 2023.

                              */s/ C. Garner Sanford, Jr.*
                              C. Garner Sanford, Jr. (*pro hac vice*)

17