# EXHIBIT HH

**EXHIBIT 1**

# WHISARD Compliance Action Report

## U.S. Department of Labor

Wage and Hour Division

| | | | |
|---|---|---|---|
| Case ID: | *1794793* | Originating District: | *Atlanta GA District Office* |
| Local Filing Number: | *2016-111-29780* | Investigating. District: | *Atlanta GA District Office* |
| WHMIS Case Number: | | Lead Investigator: | Ex. (b)7(C) |
| Registration Date: | *06/17/2016* | | |
| Assignment Date: | *07/20/2016* | | |

## Employer Information

| | | | |
|---|---|---|---|
| Trade Name: | *Flowers Foods - Atlanta* | Legal Name: | *Flowers Baking Co. of Villa Rica, LLC* |
| Address: | *165 Northside Drive NW* | EIN: | *58-2109227* |
| | | County: | *Fulton* |
| | | NAICS Code: | *311812* |
| | *Atlanta, GA30314* | No. Of Employees: | Ex. (b)(4) |

## Investigation Information

| | | | |
|---|---|---|---|
| Period Investigated From: | *09/09/2014* | BNPI: | |
| To: | *09/08/2016* | Reinvestigation: | ☐ |
| Investigation Type: | Ex (b)7(E) | Recurring Violation: | ☐ |
| Investigation Tool: | *Limited Investigation* | Future Compliance Agreed: | ☐ |
| Compliance Status: | *Refuse to Comply* | Involved in AG: | ☐ |

## Recommended Action:

| | | | |
|---|---|---|---|
| BWFS: | ☐ | RO/NO Review: | ☐ |
| CMP: | ☐ | Follow Up Investigation: | ☐ |
| Litigation: | ☐ | Other Action: | ☐ |
| Civil Action: | ☐ | Denial of Future Certificate: | ☐ |
| Criminal Action: | ☐ | BW Payment Deadline: | |
| Submit For Opinion: | ☐ | Trailer forms attached: | ☐ |

## CL

| Violation / Compliance Status | Violations | EEs ATP | BWs Computed | BWs Agreed | LDs Computed | LDs Agreed | CMPs* |
|---|---|---|---|---|---|---|---|
| *No Violation found for this act / Compliance (no violations found)* | | | | | *$0.00* | *$0.00* | |
| | | | | | | | |

# WHISARD Compliance Action Report

## FLSA

| Violation / Compliance Status | Violations | EEs ATP | BWs Computed | BWs Agreed | LDs Computed | LDs Agreed | CMPs* |
|---|---|---|---|---|---|---|---|
| *Failure to keep accurate records / Refuse to Comply* | *1* | *0* | *$0.00* | *$0.00* | *$0.00* | *$0.00* | |
| ***FLSA Totals:*** | *0* | *0* | *$0.00* | *$0.00* | *$0.00* | *$0.00* | |
| ***Total Violations Under FLSA:*** | | *1* | | | | | *$0.00* |

** CMPs computed do not necessarily indicate CMPs assessed.*

| | | | |
|---|---|---|---|
| Unduplicated Employees Found: | *0* | Unduplicated Employees Agreed: | *0* |
| Total Amount BWs Computed: | *$0.00* | Total Amount BWs Agreed: | *$0.00* |
| Total Amount LDs Computed: | *$0.00* | Total Amount LDs Agreed: | *$0.00* |

## Conclusions & Recommendations:

***277 hrs. Ex. (b)7(E) Flowers Baking Co. of Villa Rica, LLC operates bakeries in the state of Georgia. Limited investigation. Ent Cvg established under sec 203(s)1(a). ER misclassified Independent Distributors as independent contractors rather than employees. Sec 211 viols. Likely sec 206 viol from deductions, but specific and sufficient evidence not found. No sec. 207 or 212 viols. FC held 7/11/17. ER RTC. Recommend case be closed.***

WHI Signature:____________________ Date: *12/20/2017*

Reviewed By:____________________ Date:__________

# WHISARD Compliance Action Report

## U.S. Department of Labor
Wage and Hour Division

| | | | |
|---|---|---|---|
| Case ID: | *1794794* | Originating District: | *Atlanta GA District Office* |
| Local Filing Number: | *2016-111-29781* | Investigating. District: | *Atlanta GA District Office* |
| WHMIS Case Number: | | Lead Investigator: | Ex. (b)7(C) |
| Registration Date: | *06/17/2016* | | |
| Assignment Date: | *07/20/2016* | | |

## Employer Information

| | | | |
|---|---|---|---|
| Trade Name: | *Flowers Foods, Inc, Augusta* | Legal Name: | *Derst Baking Company, LLC.* |
| Address: | *3338 Peach Orchard Road* | EIN: | *20-4431256* |
| | | County: | *Richmond* |
| | | NAICS Code: | *311812* |
| | *Augusta, GA30906* | No. Of Employees: | Ex. (b)(4) |

## Investigation Information

| | | | |
|---|---|---|---|
| Period Investigated From: | *09/09/2014* | BNPI: | |
| To: | *09/08/2016* | Reinvestigation: | ☐ |
| Investigation Type: | Ex (b)7(E) | Recurring Violation: | ☐ |
| Investigation Tool: | *Limited Investigation* | Future Compliance Agreed: | ☐ |
| Compliance Status: | *Agree to Comply* | Involved in AG: | ☐ |

## Recommended Action:

| | | | |
|---|---|---|---|
| BWFS: | ☐ | RO/NO Review: | ☐ |
| CMP: | ☐ | Follow Up Investigation: | ☐ |
| Litigation: | ☐ | Other Action: | ☐ |
| Civil Action: | ☐ | Denial of Future Certificate: | ☐ |
| Criminal Action: | ☐ | BW Payment Deadline: | |
| Submit For Opinion: | ☐ | Trailer forms attached: | ☐ |

## CL

| Violation / Compliance Status | Violations | EEs ATP | BWs Computed | BWs Agreed | LDs Computed | LDs Agreed | CMPs* |
|---|---|---|---|---|---|---|---|
| *No Violation found for this act / Compliance (no violations found)* | | | | | *$0.00* | *$0.00* | |
| | | | | | | | |

## WHISARD Compliance Action Report

### FLSA

| Violation / Compliance Status | Violations | EEs ATP | BWs Computed | BWs Agreed | LDs Computed | LDs Agreed | CMPs* |
|---|---|---|---|---|---|---|---|
| *Failure to keep accurate records / Refuse to Comply* | *1* | *0* | *$0.00* | *$0.00* | *$0.00* | *$0.00* | |
| ***FLSA Totals:*** | *0* | *0* | *$0.00* | *$0.00* | *$0.00* | *$0.00* | |
| ***Total Violations Under FLSA:*** | | *1* | | | | | *$0.00* |

** CMPs computed do not necessarily indicate CMPs assessed.*

| | | | |
|---|---|---|---|
| Unduplicated Employees Found: | *0* | Unduplicated Employees Agreed: | *0* |
| Total Amount BWs Computed: | *$0.00* | Total Amount BWs Agreed: | *$0.00* |
| Total Amount LDs Computed: | *$0.00* | Total Amount LDs Agreed: | *$0.00* |

## Conclusions & Recommendations:

***132.25 hrs.*** Ex. (b)7(E) ***Limited investigation. Ent Cvg establishted under sec 203(s)1(a). ER misclassified Independent Distributors as independent contractors rather than employees. Sec 211 viols. Likely sec 206 viol from deductions, but specific and sufficient evidence not found. No sec. 207 or 212 viols. FC held 7/11/17. ER RTC. Recommend case be closed.***

WHI Signature:____________________ Date: *01/08/2018*

Reviewed By:____________________ Date:__________

# WHISARD Compliance Action Report

## U.S. Department of Labor
Wage and Hour Division

| | | | |
|---|---|---|---|
| Case ID: | *1797727* | Originating District: | *Atlanta GA District Office* |
| Local Filing Number: | *2016-111-29909* | Investigating. District: | *Atlanta GA District Office* |
| WHMIS Case Number: | | Lead Investigator: | Ex. (b)7(C) |
| Registration Date: | *07/27/2016* | | |
| Assignment Date: | *08/10/2016* | | |

## Employer Information

| | | | |
|---|---|---|---|
| Trade Name: | *Flowers Foods - Corporate* | Legal Name: | *Flowers Foods, Inc* |
| Address: | *1919 Flowers Circle* | EIN: | *58-2109227* |
| | | County: | *Thomas* |
| | | NAICS Code: | *311812* |
| | *Thomasville, GA31757* | No. Of Employees: | Ex. (b)(4) |

## Investigation Information

| | | | |
|---|---|---|---|
| Period Investigated From: | *09/09/2014* | BNPI: | |
| To: | *09/08/2016* | Reinvestigation: | ☐ |
| Investigation Type: | Ex (b)7(E) | Recurring Violation: | ☐ |
| Investigation Tool: | *Limited Investigation* | Future Compliance Agreed: | ☐ |
| Compliance Status: | *Refuse to Comply* | Involved in AG: | ☐ |

## Recommended Action:

| | | | |
|---|---|---|---|
| BWFS: | ☐ | RO/NO Review: | ☐ |
| CMP: | ☐ | Follow Up Investigation: | ☐ |
| Litigation: | ☐ | Other Action: | ☐ |
| Civil Action: | ☐ | Denial of Future Certificate: | ☐ |
| Criminal Action: | ☐ | BW Payment Deadline: | |
| Submit For Opinion: | ☐ | Trailer forms attached: | ☐ |

## CL

| Violation / Compliance Status | Violations | EEs ATP | BWs Computed | BWs Agreed | LDs Computed | LDs Agreed | CMPs* |
|---|---|---|---|---|---|---|---|
| *No Violation found for this act / Compliance (no violations found)* | | | | | *$0.00* | *$0.00* | |
| | | | | | | | |

# WHISARD Compliance Action Report

## FLSA

| Violation / Compliance Status | Violations | EEs ATP | BWs Computed | BWs Agreed | LDs Computed | LDs Agreed | CMPs* |
|---|---|---|---|---|---|---|---|
| *No Violation found for this act / Not Applicable* | | | | | *$0.00* | *$0.00* | |
| ***FLSA Totals:*** | *0* | *0* | *$0.00* | *$0.00* | *$0.00* | *$0.00* | |

** CMPs computed do not necessarily indicate CMPs assessed.*

| | | | |
|---|---|---|---|
| Unduplicated Employees Found: | *0* | Unduplicated Employees Agreed: | *0* |
| Total Amount BWs Computed: | *$0.00* | Total Amount BWs Agreed: | *$0.00* |
| Total Amount LDs Computed: | *$0.00* | Total Amount LDs Agreed: | *$0.00* |

**Conclusions & Recommendations:**

***130 hrs. Ex. (b)7(E) . Flowers Foods, Inc. owns numerous wholly owned subsidiaries which operate bakeries across the US. Limited investigation. Ent Cvg established under sec 203(s)1(a). Ex. (b)7(E) No findings made in this case. FC held 7/11/17 on case other case. ER RTC. Recommend case be closed.***

WHI Signature:______________________ Date: *12/20/2017*

Reviewed By:______________________ Date:__________

Flowers Foods - Atlanta Case ID: 1794793

## FLSA NARRATIVE

## COVERAGE

Since Flowers Baking Co. of Villa Rica, LLC's annual dollar volume annually exceeds $500,000.00, and at least 2 full time workers handle goods that have moved in commerce (baked goods manufactured in Alabama and Pennsylvania), enterprise coverage has been established. (See exhibit C-2) See relevant information below.

The period of investigation in this case is from September 9th, 2014 to September 8th, 2016. This is a limited investigation of Flowers Baking Co. of Villa Rica, LLC, focusing only on Sales Representatives, Potential Distributors, and Independent Distributors.

Flowers Baking Co. of Villa Rica, LLC is a wholly owned subsidiary of Flowers Foods, Inc. Flowers Baking Co. of Villa Rica, LLC operates bakeries in the state of Georgia producing products sold under various brands owned by Flowers Foods, Inc. In addition to baking these goods, Flowers Baking Co. of Villa Rica, LLC also owns and operates several distribution warehouses across Georgia.

Ex. (b)7(E)

Flowers Baking Co. of Villa Rica, LLC is a company created in the state of Georgia on December 30th, 2000. Flowers Baking Co. of Villa Rica, LLC is a wholly owned subsidiary of Flowers Foods, Inc. Flowers Foods, Inc. holds a 100% interest in Flowers Bakeries, LLC. Flowers Bakeries, LLC in turn holds a 100 % interest in Flowers Baking Co. of Villa Rica, LLC (along with several others subsidiaries including Derst Baking Company, LLC which is the subject of investigation #1794794). Each of these named subsidiaries form a single enterprise with Flowers Foods, Inc. They all perform related activities for a common business purpose. They do so by both unified operation, and common control. The position of Plant President for Flowers Baking Co. of Villa Rica, LLC reports directly to the Senior Vice President of Flowers Bakeries, LLC. The position of President of Flowers Bakeries, LLC reports directly to the Chief Operating Officer of Flowers Foods, Inc. (See exhibits C-6-a, C-5-d, and C-5-a Ex. (b)7(E) Further, all entities which make up this enterprise operate to make, promote and sell products owned by Flowers Foods, Inc. (See exhibits C-5 – C-6 for a visual map of this enterprise.)

Allen Shiver is President and Chief Executive Officer of Flowers Foods, Inc. Steve Kinsey is Executive Vice President and Chief Financial Officer of Flowers Foods, Inc. Bradley K. Alexander is Executive Vice President and Chief Operating Officer of Flowers Foods, Inc. D. Keith Wheeler is President of Flowers Bakeries, LLC. Duane Pope is Plant President of Flowers Baking Co. of Villa Rica, LLC. (See exhibits C-4-a (Bates #00073561) and C-6-a (Bates #00197214) As a publicly traded company, ownership interests in the enterprise

changed on a daily basis.

Mr. Kenny Covington is the 3(d) employer in this case. He supervises employees on a daily basis. Mr. Covington hires and fires and gives pay raises to employees. Ex. (b)7(C)

The Annual Dollar Volume for the enterprise for the last three years is as follows:

2015: Tax returns had not yet been filed for this year, but the enterprise stipulated in writing that it was a covered enterprise for the entire period of investigation. (See exhibit C-2)
2014 Ex. (b)(4) (C-3-c)
2013 Ex. (b)(4) (See exhibit C-3-b)

Flowers Baking Co. of Villa Rica, LLC's position is that approximately Ex (b)(4) of the individuals performing work for it are employees, while an additiona Ex (b)(4) individuals work as "Independent Distributors" and are considered independent contractors. Since this investigation focused on Flowers Baking Co. of Villa Rica, LLC and its relationship to the larger enterprise, no inquiry was made into the total number of workers employed under other wholly owned subsidiaries of Flowers Foods, Inc.

Flowers Baking Co. of Villa Rica, LLC's employees regularly handle goods which have moved in interstate commerce. Specifically, these employees handle baked goods shipped from Alabama and Pennsylvania. (See exhibit C-1 Ex. (b)7(C)

Employment Relationship:

1. Is the work an integral part of the employer's business?

The work performed by Sales Representatives, Prospective Distributors, and Independent Distributors is integral and essential to this employer's business. This employer is in the business of making, marketing, and providing its products to its customers. Workers in these three positions are the only methods by which this employer delivers its products to its customers. The products this employer sells would not arrive at their customer's location without the work performed by these individuals. Because of this, this factor tilts heavily in favor of all of these workers being employees of this enterprise. (See exhibits C-1 Ex. (b)7(C)

2. Does the worker's managerial skill affect the worker's opportunity for profit or loss?

These Independent Distributors have the ability to hire other workers to perform some or all of the work involved in fulfilling their obligations under their Distributorship Agreements. (See exhibit D-24). Some of these Independent Distributors do, in fact, hire other workers and pay them directly. This exercise of this managerial skill may impact these workers' opportunity for

profit or loss. However, the majority of Independent Distributors contacted do not employ any other workers. They perform all work themselves. (See Ex. (b)7(C)

As of January 30th, 2017 14.9% of Independent Distributors had signed an agreement with Flowers Baking Co. of Villa Rica, LLC to form corporations to operate their distributorships. (See exhibit D-29 (Letter dated 1/30/17))

Independent Distributors do not have the ability to negotiate matters of substance with customers on the vast majority of their accounts. On "National Accounts", these independent distributors do not have the ability to negotiate an increase in price charged to the customer, the types of products sold to customers, the minimum quantity of each product delivered to customers, the placement of products on customer shelves, or the timing and manner of periodic sales on the products they deliver. They also do not have the ability to negotiate the price they pay to Flowers Baking Co. of Villa Rica, LLC for the products they are required to buy from them. (See exhibits B-1 through B-10)

During the entire period of investigation, and until January 2nd, 2017, Independent Distributors did not need to exercise managerial skill in overseeing their distributorship when taking time off. Flowers Baking Co. of Villa Rica, LLC had a policy in place to have an employee of the company run an Independent Distributor's route for $50 for the first week each calendar year, and $250 for the second week. (See exhibit D-29 and letter dated 1/30/17)

Flowers Baking Co. of Villa Rica, LLC's policies further reduced the need for the exercise of managerial skill by agreeing to buy back up to 10% of the product each distributor ordered when they returned it as stale. The company refunded 100% of the cost of each item up to 10% of each distributor's total order. Returns above 10% would be refunded at 50% of cost. This was in place for all Independent Distributors who had not signed the 2015 or 2016 optional amendments. (See exhibit D-29 and letter of 1/30/17) This policy served to lessen the opportunity for these Independent Distributors to suffer a loss.

These distributors do have the ability to decide when to sell their distributorship rights. (See exhibits Ex. (b)7(C) and C-1) The timing of this decision and the price at which these rights are sold can impact these workers' opportunity for profit or loss.

There is substantial evidence pointing in either direction under this fact. It is a close call whether this factor tilts towards these workers being employees or independent contractors. However, it appears this factor tilts slightly in favor of these workers being independent contractors.

3. How does the worker's relative investment compare to the employer's investment?

The investment made by most Independent Distributors is miniscule compared to this employer's investment. Many Independent Distributors signed Independent Distributorship Agreements to purchase distributorships with no up-front investment. The entire transaction

was financed through a third party to whom they were often referred by this employer. (See exhibits Ex. (b)6 & 7(C))

Further, the largest (and often only other) investments made by these Independent Distributors are in their trucks. Many Independent Distributors sign lease agreements to operate these trucks rather than purchasing them outright. (See exhibits Ex. (b)7(C) Often, rather than making down payments for these trucks, many Independent Distributors signed purchase agreements for these trucks with no money down.

There is also no investment on the part of the Independent Distributor in the tools they use to perform their job. These tools include a handheld computer, bread racks, and warehouse/dock space. Title to all of these items remain with this employer and these Independent Distributors are either charged a fee to use these items, or they are provided their use free of charge (as is the case for bread racks). (See exhibits Ex. (b)7(C)

On the other hand, this employer has made very large investments in its operations, especially compared to the investments made by these Independent Distributors. The bakeries where these products are produced along with the distribution warehouses where these products are picked up for deliver to the ultimate consumer are all owned by this employer. Further, this employer has made a substantial investment in advertising its products, especially compared to the small or non-existent investment in advertising made by these Independent Distributors. (See exhibits Ex. (b)7(C)

Because the relative investments made by this employer and these Independent Distributors are so imbalanced, this factor weighs heavily in favor of these Independent Distributors being employees.

4. Does the work performed require special skill and initiative?

The work performed by Sales Representatives, Prospective Distributors, and Independent Distributors requires very low levels of skill and initiative. These workers report that the skills needed to perform their job are usually acquired through a relatively brief time spent as a Prospective Distributor. During this time spent as a Prospective Distributor, workers are trained by employees of Flowers Baking Co. of Villa Rica, LLC. This training includes how to load baked goods onto their truck, how to drive the route, how to stock shelves, how to pick up out of date product, and how to use the handheld computer to place orders. None of this work requires special skills which require extended periods of training or study. (See exhibits Ex. (b)7(C) These workers report that the skill which takes the longest amount of time to develop is deciding how much of each product to order each day. However, most report that this skill is developed rather quickly simply by remembering or examining how much product sold at each customer's location recently. Further, Flowers Foods, Inc.'s software (which is pre-loaded into the handheld computers used by Independent Distributors) offers suggestions as to how much to order for each product. (See Ex. (b)7(C))

As referenced previously, this employer's practice of allowing a stale percentage (a percentage of product to be returned as stale at no cost to the Independent Distributor), further lessens the skill required to perform this work. Specifically, it makes the task of ordering correct quantities much less difficult than it would be if it were not in place. (See exhibit D-29 and letter of 1/30/17)

The work performed by these workers also requires a very low level of initiative. Flowers Baking Co. of Villa Rica, LLC negotiates all contracts with customers it considers to be "national accounts". "National Accounts" roughly encompass all customers who operate more than one physical location. So, Independent Distributors have the ability to negotiate only with "mom and pop" (single location) customers. Because of this, Independent Distributors are prohibited from increasing prices, negotiating which products are sold, negotiating shelf space or product placement, or any other substantive aspect of their relationship with "national account" customers. These "National Accounts" make up the overwhelming majority of the accounts serviced by Independent Distributors. Further, employees of Flowers Baking Co. of Villa Rica, LLC regularly negotiate with local store managers to have displays placed in the customer's stores. Only very rarely do Independent Distributors negotiate with a representative of a store to install a temporary display. These workers exercise very little independent business judgement. Ex. (b)6, Ex. (b)7(C)

The low level of skill required to perform this work, coupled with the lack of significant initiative required, tilt this factor heavily toward these workers being economically dependent on this employer and thus being employees.

5. Is the relationship between the worker and the employer permanent or indefinite?

Most Independent Distributors perform work only for Flowers Baking Co. of Villa Rica, LLC, and have done so for several years. Of those interviewed during this investigation, the average length of time spent as an Independent Distributor for Flowers Baking Co. of Villa Rica, LLC is more than a year. The vast majority of these independent distributors do not contract with Flowers Baking Co. of Villa Rica, LLC to perform this work until the completion of a job or for a finite period of time. Instead, these Independent Distributors contract to perform this work on a daily basis and for an indefinite period of time. (See Ex. (b)7(C)

Since the relationship between this employer and these Independent Distributors is of indefinite length, and many Independent Distributors have performed work for this employer for many years, this factor tilts heavily in favor of these Independent Distributors being employees of this enterprise.

6. What is the nature and degree of the employer's control?

Flowers Baking Co. of Villa Rica, LLC exerted a limited amount of direct control on Independent Distributors. Flowers Baking Co. of Villa Rica, LLC required Independent

distributors to service all accounts in their territory, to deliver all products required by customers, to use a dock at a warehouse owned by Flowers Baking Co. of Villa Rica, LLC, to pay a fee to use this dock, to use a handheld computer owned by Flowers Baking Co. of Villa Rica, LLC, to pay to use this computer, to pay Flowers Baking Co. of Villa Rica, LLC a non-negotiable price for all products, and to operate in accordance with "good industry practice". Flowers Baking Co. of Villa Rica, LLC enforced the quality control aspects of these requirements by regularly visiting their customer's locations to determine whether Independent Distributors were complying with the requirements set out in their respective Distributorship Agreements. Flowers Baking Co. of Villa Rica, LLC also prohibited these Independent Distributors from negotiating with all customers which qualified as "National Accounts". (See exhibits [redacted] Ex. (b)7(C) C-1)

This employer's managers, at various times, engaged in a practice known as "plussing". "Plussing" occurs when either a quantity larger than originally ordered, or a product not ordered, is placed in the inventory of Independent Distributors. This action was taken by employees of Flowers Baking Co. of Villa Rica, LLC without prior request of Independent Distributors, and often over their objections. (See exhibits [redacted] Ex. (b)7(C) D-29 letter of 1/30/17)

Flowers Baking Co. of Villa Rica, LLC maintained a right of first refusal regarding any potential sale of a distributorship by an Independent Distributor who signed a Distributorship Agreement prior to 2015. The company also imposed a 5% fee on any transfer of ownership between third parties. These agreements also included a covenant not to compete. (See exhibit D-29 (January 30th, 2017 memo))

However, Flowers Baking Co. of Villa Rica, LLC did not require that Independent Distributors wear uniforms, begin or end work at a set time, control the order in which customers were visited, purchase or use any specific vehicle, or screen workers hired by Independent Distributors.

A great deal of control is exerted on these Independent Distributors in an indirect manner through Flowers Baking Co. of Villa Rica, LLC's customers. Contracts with all "National Accounts" [redacted] Ex. (b)(4) are negotiated by Flowers Baking Co. of Villa Rica, LLC (or Flowers Foods, Inc). These contracts place requirements on Independent Distributors. These contracts dictate to Independent Distributors the types of products to be delivered, the minimum quantity of each product to be delivered, the number of times per week each account must be serviced, the time of day in which the account must be serviced, the exact place on each shelf where products must be delivered, and the maximum amount each customer will pay for delivered products.

Due to the combined effects of this direct and indirect control, Independent Distributors have very little discretion and independent judgment regarding how to perform their work. They have some discretion as to when to begin work in the morning, what type of vehicle to use, in what order to service accounts, whether to hire other workers, whether to solicit business from

single location "mom and pop" accounts, and whether to lower the price at which they sell their products to customers. Virtually all other aspects of the day to day work performed by these Independent Distributors are either controlled directly by Flowers Baking Co. of Villa Rica, LLC, or indirectly by the requirements of the contract between Flowers and their customer.

Because of the high degree of control exerted over the work performed by these Independent Distributors (both directly and indirectly), this factor tilts heavily in favor of these Independent distributors being economically dependent on this employer and, thus, being employees.

After applying the Economic Realities test, it is clear that these Independent Distributors are, in fact, employees of this enterprise.

## EXEMPTIONS

Section 13(b)1: Applicable

Flowers Baking Co. of Villa Rica, LLC's position is that all individuals working as Sales Representatives, Potential Distributors, and Independent Distributors are exempt from overtime under the Section 13(b)1 Motor Carrier Exemption. This exemption is applicable and these employees are exempt from overtime.

These individuals are employees of Motor Private Carriers. They drive vehicles with a gross vehicle weight in excess of 10,001 lbs. While the transportation involved in these drivers' duties is not in interstate commerce, and it does not connect with an interstate terminal, it does continue an interstate journey of goods that have not come to rest at a final destination. Some of the goods these drivers are transporting originated outside of the state of Georgia. For example, Mike's Killer Bread is only baked in Tuscaloosa, Alabama. Tastycake products are only baked in Philadelphia, Pennsylvania. These drivers deliver these products to customer locations in the state of Georgia. These goods are baked in response to orders placed by these individuals through handheld computers. This ordering usually begins at the customer's location and is transmitted through this enterprise's computer system to bakeries in states across the country. These bakeries then generate these orders, bake these goods, and ship these goods to distribution warehouses around the country. These goods typically stay at these distribution warehouses a very short period of time. These workers then pick these goods up at the distribution warehouse, drive them to their ultimate destination at the customer's location, and deliver them. These goods do not come to rest for interstate commerce purposes until they have reached the customer's location.

Positions exempt under section 213(b)1 include Sales Representatives, Potential Distributors, and Independent Distributors. (See exhibits Ex. (b)7(C) )

Section 13(a)1: Not Applicable

Flowers Foods - Atlanta Case ID: 1794793

This employer asserts that individuals working as Sales Representatives, Potential Distributors, and Independent Distributors are exempt from minimum wage, overtime, and the recordkeeping requirements of the act because they qualify for the "Outside Sales" exemption codified in 29 CFR 541.500. This exemption is not applicable.

Individuals working in these positions are customarily and regularly engaged away from the employer's place or places of business. However, their primary duty is not "making sales" or "obtaining orders or contracts for services or for the use of facilities" as required by §541.500(a)(1). Interview statements reveal that the primary duties of these individuals are to drive vehicles from distribution warehouses to customer locations, to deliver products, to rotate stock, and to retrieve out of date products to return to the distribution warehouse. (See exhibits Ex. (b)7(C) ) The primary duties of these workers most closely align with those codified in 29 CFR 541.504(d)(2) and 29 CFR 541.504(d)(3). The regulations specify that drivers with these primary duties do not qualify for the "Outside Sales" exemption.

**STATUS OF COMPLIANCE**

Ex. (b)7(E)

History: This is the first investigation of Flowers Baking Co. of Villa Rica, LLC.

Section 206: Minimum wage violations were likely present during the period of investigation. Numerous Independent Distributors incurred substantial vehicle related expenses at various times throughout the period of investigation. (See Ex. (b)7(C) It is likely that at least some of these expenses constituted deductions which resulted in the Independent Distributors' regular rate dropping below minimum wage in the workweek in which it occurred. However, specific and sufficient evidence was not obtained during the course of this investigation to allow for citing these incidents as minimum wage violations in WHISARD. Therefore, no section 206 violations were cited, and no back wages were computed in this case.

Section 207: No overtime violations were present during the period of investigation. Evidence was provided that most, if not all, employees working as Sales Representatives, Potential Distributors, or Independent Distributors were exempt from overtime under the section 213(b)1 Motor Carrier exemption. (See exhibits Ex. (b)6, Ex. (b)7(C)

Section 211: Record keeping violations were present in this case stemming from this employer's failure to maintain accurate time records for all non-exempt employees. Since this employer considered all Independent Distributors to be independent contractors rather than employees, they did not maintain any time records for these individuals during the period of investigation.

Section 212: No employment of minors was observed, found in employment records, or

indicated via employee interviews during the investigative period. (See exhibits Ex. (b)7(C) .

## DISPOSITION

A final conference was held at the offices of Ogletree Deakins in Atlanta on July 11th, 2017. In attendance were WHI Ex. (b)7(C), WHI Ex. (b)7(C) Al Robinson (outside counsel) Garner Sanford (outside counsel), Kevin Hishta (outside counsel), Stephanie Tillman (Vice President, Chief Compliance Officer, and Deputy General Counsel), and Steven Moulds (Associate General Counsel). WHI Ex. (b)7(C) and WHI Ex. (b)7(C) reviewed the requirements of the FLSA including record keeping; hours worked, minimum wage, overtime, the §541 exemptions, child labor and CMPs.

WHI Ex. (b)7(C) and WHI provided a detailed discussion of the evidence found regarding the employment relationship between Independent Distributors and Flowers Foods. This included detailed explanations of each factor in the employment relationship test and the applicable evidence found during the course of the investigation. WHI Ex. (b)7(C) explained that the findings of this investigation were that these Independent Distributors were, in fact, employees of Flowers foods. WHI Ex. (b)7(C) further explained that the section 213(b)1 Motor Carrier Exemption was applicable to many of these individuals, but that the Outside Sales Exemption was not applicable. Neither this employer, nor its representatives, offered explanation or clarification of its position during the final conference other than to say that they understood the position of the Department of Labor.

Regarding the possible Section 206 Minimum Wage Violation: WHI explained that it is very likely that the large expenses incurred by Independent Distributors resulted in minimum wage violations in the workweeks in which they occurred. Rather than agreeing to comply and insuring that all Independent Distributors received at least minimum wage for all hours worked, this employer's outside counsel requested time to provide the Department of Labor with a detailed written position statement outlining the changes this employer had either already made, or would agree to make to its operating model relating to this issue. Since this employer would not agree to comply at the final conference, no discussion of possible back wages owed was held.

Regarding the Section 211 Recordkeeping Violation: After being advised by WHI Ex. (b)6 that failing to keep and maintain accurate time records constituted a violation of section 211, this employer's representatives again asked to be given time to provide a detailed written position statement outlining the changes they were willing to make regarding recordkeeping. No representative of this employer stated that this employer was willing to comply with the requirements of this section.

(b) (7)(E)

(b) (7)(E) A Handy Reference Guide was provided to the employer at the initial conference.

Publications furnished to the employer: Fact Sheets #16, #17B, #21, #22, #23, #43, #28D and, #44, CL 101, 29 CFR 578, and the HRG.

On September 1st, 2017, outside counsel for Flowers Foods provided the company's position statement explaining in detail the changes it had made, and those it would agree to make, regarding compliance under the Fair Labor Standards Act. (See exhibit D-31) This document again reiterates this employer's position that these Independent Distributors are not employees. The changes this employer is willing to make are not sufficient comply with the requirements of section 206 or 211 of the Act. Flowers does not agree to insure that all Independent Distributors are compensated at least minimum wage for all hours worked. Further, they do not agree to keep all records as required under section 516 (including time records). Therefore, this final position statement has the effect of being a refusal to comply with sections 206 and 211 of the Fair Labor Standards Act.

Correspondence should be mailed to:

Alfred B. Robinson
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
1909 K Street, N.W., Suite 1000
Washington, DC 20006
202-263-0269

Ex. (b)7(E)

Recommendation: This firm currently refuses to comply with the requirements of the Act. I recommend this case be closed administratively.

Ex. (b)7(C)
WH Investigator
December 20th, 2017

Flowers Foods - Corporate Case ID: 1797727

## FLSA NARRATIVE

Ex. (b)7(E)

This investigation was initiated in order to have an open investigation on the parent company of all wholly owned subsidiaries of Flowers Foods, Inc. while separate investigations were conducted on two such wholly owned subsidiaries. All actions taken to obtain records in these cases, including the issuance of a subpoena, were undertaken in this investigation. Work in this investigation focused only on obtaining records, reviewing records, and working with Flowers Foods, Inc. and its outside counsel to resolve issues regarding records. No findings regarding compliance with sections 206, 207, or 212 were made in this case.

Flowers Foods, Inc. and its wholly owned subsidiary, Flowers Baking Co. of Villa Rica, LLC, have refused to comply and maintain records as required under section 516. This case is being submitted as a refusal to comply. A copy of the narrative for case #1794793 is included below for reference.

I recommend this case be closed administratively in conjunction with cases #1794793 and #1794794.

Ex. (b)7(C)
Wage Hour Investigator
December 20th, 2018

## FLSA NARRATIVE

### COVERAGE

Since Flowers Baking Co. of Villa Rica, LLC's annual dollar volume annually exceeds $500,000.00, and at least 2 full time workers handle goods that have moved in commerce (baked goods manufactured in Alabama and Pennsylvania), enterprise coverage has been established. (See exhibit C-2) See relevant information below.

The period of investigation in this case is from September 9th, 2014 to September 8th, 2016. This is a limited investigation of Flowers Baking Co. of Villa Rica, LLC, focusing only on Sales Representatives, Potential Distributors, and Independent Distributors.

Flowers Baking Co. of Villa Rica, LLC is a wholly owned subsidiary of Flowers Foods, Inc.

Flowers Foods - Corporate Case ID: 1797727

Flowers Baking Co. of Villa Rica, LLC operates bakeries in the state of Georgia producing products sold under various brands owned by Flowers Foods, Inc. In addition to baking these goods, Flowers Baking Co. of Villa Rica, LLC also owns and operates several distribution warehouses across Georgia.

MODO instructions were to: (b) (7)(E)

Flowers Baking Co. of Villa Rica, LLC is a company created in the state of Georgia on December 30th, 2000. Flowers Baking Co. of Villa Rica, LLC is a wholly owned subsidiary of Flowers Foods, Inc. Flowers Foods, Inc. holds a 100% interest in Flowers Bakeries, LLC. Flowers Bakeries, LLC in turn holds a 100 % interest in Flowers Baking Co. of Villa Rica, LLC (along with several others subsidiaries including Derst Baking Company, LLC which is the subject of investigation #1794794). Each of these named subsidiaries form a single enterprise with Flowers Foods, Inc. They all perform related activities for a common business purpose. They do so by both unified operation, and common control. The position of Plant President for Flowers Baking Co. of Villa Rica, LLC reports directly to the Senior Vice President of Flowers Bakeries, LLC. The position of President of Flowers Bakeries, LLC reports directly to the Chief Operating Officer of Flowers Foods, Inc. (See exhibits C-6-a, C-5-d, and C-5-a Ex. (b)7(E) Further, all entities which make up this enterprise operate to make, promote and sell products owned by Flowers Foods, Inc. (See exhibits C-5 – C-6 for a visual map of this enterprise.)

Allen Shiver is President and Chief Executive Officer of Flowers Foods, Inc. Steve Kinsey is Executive Vice President and Chief Financial Officer of Flowers Foods, Inc. Bradley K. Alexander is Executive Vice President and Chief Operating Officer of Flowers Foods, Inc. D. Keith Wheeler is President of Flowers Bakeries, LLC. Duane Pope is Plant President of Flowers Baking Co. of Villa Rica, LLC. (See exhibits C-4-a (Bates #00073561) and C-6-a (Bates #00197214) As a publicly traded company, ownership interests in the enterprise changed on a daily basis.

Mr. Kenny Covington is the 3(d) employer in this case. He supervises employees on a daily basis. Mr. Covington hires and fires and gives pay raises to employees. (See Ex. (b)7(C)

The Annual Dollar Volume for the enterprise for the last three years is as follows:

2015: Tax returns had not yet been filed for this year, but the enterprise stipulated in writing that it was a covered enterprise for the entire period of investigation. (See exhibit C-2)

2014:$ Ex. (b)(4) (C-3-c)

2013:$ Ex. (b)(4) (See exhibit C-3-b)

Flowers Baking Co. of Villa Rica, LLC's position is that approximately [redacted] of the individuals performing work for it are employees, while an additiona [redacted] individuals work as “Independent Distributors” and are considered independent contractors. Since this investigation focused on Flowers Baking Co. of Villa Rica, LLC and its relationship to the larger enterprise, no inquiry was made into the total number of workers employed under other wholly owned subsidiaries of Flowers Foods, Inc.

Flowers Baking Co. of Villa Rica, LLC's employees regularly handle goods which have moved in interstate commerce. Specifically, these employees handle baked goods shipped from Alabama and Pennsylvania. (See exhibit C-1 [redacted])

Employment Relationship:

1. Is the work an integral part of the employer's business?

The work performed by Sales Representatives, Prospective Distributors, and Independent Distributors is integral and essential to this employer's business. This employer is in the business of making, marketing, and providing its products to its customers. Workers in these three positions are the only methods by which this employer delivers its products to its customers. The products this employer sells would not arrive at their customer's location without the work performed by these individuals. Because of this, this factor tilts heavily in favor of all of these workers being employees of this enterprise. (See exhibits C-1 [redacted]

2. Does the worker's managerial skill affect the worker's opportunity for profit or loss?

These Independent Distributors have the ability to hire other workers to perform some or all of the work involved in fulfilling their obligations under their Distributorship Agreements. (See exhibit D-24). Some of these Independent Distributors do, in fact, hire other workers and pay them directly. This exercise of this managerial skill may impact these workers' opportunity for profit or loss. However, the majority of Independent Distributors contacted do not employ any other workers. They perform all work themselves. (See [redacted])

As of January 30th, 2017 14.9% of Independent Distributors had signed an agreement with Flowers Baking Co. of Villa Rica, LLC to form corporations to operate their distributorships. (See exhibit D-29 (Letter dated 1/30/17))

Independent Distributors do not have the ability to negotiate matters of substance with customers on the vast majority of their accounts. On “National Accounts”, these independent distributors do not have the ability to negotiate an increase in price charged to the customer, the types of products sold to customers, the minimum quantity of each product delivered to customers, the placement of products on customer shelves, or the timing and manner of periodic sales on the products they deliver. They also do not have the ability to negotiate the price they pay to Flowers Baking Co. of Villa Rica, LLC for the products they are required to

buy from them. (See Ex. (b)7(C)

During the entire period of investigation, and until January 2nd, 2017, Independent Distributors did not need to exercise managerial skill in overseeing their distributorship when taking time off. Flowers Baking Co. of Villa Rica, LLC had a policy in place to have an employee of the company run an Independent Distributor's route for $50 for the first week each calendar year, and $250 for the second week. (See exhibit D-29 and letter dated 1/30/17)

Flowers Baking Co. of Villa Rica, LLC's policies further reduced the need for the exercise of managerial skill by agreeing to buy back up to 10% of the product each distributor ordered when they returned it as stale. The company refunded 100% of the cost of each item up to 10% of each distributor's total order. Returns above 10% would be refunded at 50% of cost. This was in place for all Independent Distributors who had not signed the 2015 or 2016 optional amendments. (See exhibit D-29 and letter of 1/30/17) This policy served to lessen the opportunity for these Independent Distributors to suffer a loss.

These distributors do have the ability to decide when to sell their distributorship rights. (See exhibits Ex. (b)5 and C-1) The timing of this decision and the price at which these rights are sold can impact these workers' opportunity for profit or loss.

There is substantial evidence pointing in either direction under this fact. It is a close call whether this factor tilts towards these workers being employees or independent contractors. However, it appears this factor tilts slightly in favor of these workers being independent contractors.

3. How does the worker's relative investment compare to the employer's investment?

The investment made by most Independent Distributors is miniscule compared to this employer's investment. Many Independent Distributors signed Independent Distributorship Agreements to purchase distributorships with no up-front investment. The entire transaction was financed through a third party to whom they were often referred by this employer. (See Ex. (b)7(C)

Further, the largest (and often only other) investments made by these Independent Distributors are in their trucks. Many Independent Distributors sign lease agreements to operate these trucks rather than purchasing them outright. (See Ex. (b)7(C) Often, rather than making down payments for these trucks, many Independent Distributors signed purchase agreements for these trucks with no money down.

There is also no investment on the part of the Independent Distributor in the tools they use to perform their job. These tools include a handheld computer, bread racks, and warehouse/dock space. Title to all of these items remain with this employer and these Independent Distributors are either charged a fee to use these items, or they are provided their use free of charge (as is the case for bread racks). (See exhibits Ex. (b)7(C)

Flowers Foods - Corporate Case ID: 1797727

On the other hand, this employer has made very large investments in its operations, especially compared to the investments made by these Independent Distributors. The bakeries where these products are produced along with the distribution warehouses where these products are picked up for deliver to the ultimate consumer are all owned by this employer. Further, this employer has made a substantial investment in advertising its products, especially compared to the small or non-existent investment in advertising made by these Independent Distributors. (See ████ Ex. (b)7(C) ████

Because the relative investments made by this employer and these Independent Distributors are so imbalanced, this factor weighs heavily in favor of these Independent Distributors being employees.


4. Does the work performed require special skill and initiative?

The work performed by Sales Representatives, Prospective Distributors, and Independent Distributors requires very low levels of skill and initiative. These workers report that the skills needed to perform their job are usually acquired through a relatively brief time spent as a Prospective Distributor. During this time spent as a Prospective Distributor, workers are trained by employees of Flowers Baking Co. of Villa Rica, LLC. This training includes how to load baked goods onto their truck, how to drive the route, how to stock shelves, how to pick up out of date product, and how to use the handheld computer to place orders. None of this work requires special skills which require extended periods of training or study. (See Ex. (b)6 & 7(C) ████ These workers report that the skill which takes the longest amount of time to develop is deciding how much of each product to order each day. However, most report that this skill is developed rather quickly simply by remembering or examining how much product sold at each customer's location recently. Further, Flowers Foods, Inc.'s software (which is pre-loaded into the handheld computers used by Independent Distributors) offers suggestions as to how much to order for each product. (See ████ Ex. (b)7(C) ████ )

As referenced previously, this employer's practice of allowing a stale percentage (a percentage of product to be returned as stale at no cost to the Independent Distributor), further lessens the skill required to perform this work. Specifically, it makes the task of ordering correct quantities much less difficult than it would be if it were not in place. (See exhibit D-29 and letter of 1/30/17)

The work performed by these workers also requires a very low level of initiative. Flowers Baking Co. of Villa Rica, LLC negotiates all contracts with customers it considers to be "national accounts". "National Accounts" roughly encompass all customers who operate more than one physical location. So, Independent Distributors have the ability to negotiate only with "mom and pop" (single location) customers. Because of this, Independent Distributors are prohibited from increasing prices, negotiating which products are sold, negotiating shelf space or product placement, or any other substantive aspect of their relationship with "national

PLTFS003231

account" customers. These "National Accounts" make up the overwhelming majority of the accounts serviced by Independent Distributors. Further, employees of Flowers Baking Co. of Villa Rica, LLC regularly negotiate with local store managers to have displays placed in the customer's stores. Only very rarely do Independent Distributors negotiate with a representative of a store to install a temporary display. These workers exercise very little independent business judgement. (See Ex. (b)7(C)

The low level of skill required to perform this work, coupled with the lack of significant initiative required, tilt this factor heavily toward these workers being economically dependent on this employer and thus being employees.

5. Is the relationship between the worker and the employer permanent or indefinite?

Most Independent Distributors perform work only for Flowers Baking Co. of Villa Rica, LLC, and have done so for several years. Of those interviewed during this investigation, the average length of time spent as an Independent Distributor for Flowers Baking Co. of Villa Rica, LLC is more than a year. The vast majority of these independent distributors do not contract with Flowers Baking Co. of Villa Rica, LLC to perform this work until the completion of a job or for a finite period of time. Instead, these Independent Distributors contract to perform this work on a daily basis and for an indefinite period of time. (See Ex. (b)7(C) )

Since the relationship between this employer and these Independent Distributors is of indefinite length, and many Independent Distributors have performed work for this employer for many years, this factor tilts heavily in favor of these Independent Distributors being employees of this enterprise.

6. What is the nature and degree of the employer's control?

Flowers Baking Co. of Villa Rica, LLC exerted a limited amount of direct control on Independent Distributors. Flowers Baking Co. of Villa Rica, LLC required Independent distributors to service all accounts in their territory, to deliver all products required by customers, to use a dock at a warehouse owned by Flowers Baking Co. of Villa Rica, LLC, to pay a fee to use this dock, to use a handheld computer owned by Flowers Baking Co. of Villa Rica, LLC, to pay to use this computer, to pay Flowers Baking Co. of Villa Rica, LLC a non-negotiable price for all products, and to operate in accordance with "good industry practice". Flowers Baking Co. of Villa Rica, LLC enforced the quality control aspects of these requirements by regularly visiting their customer's locations to determine whether Independent Distributors were complying with the requirements set out in their respective Distributorship Agreements. Flowers Baking Co. of Villa Rica, LLC also prohibited these Independent Distributors from negotiating with all customers which qualified as "National Accounts". (See Ex. (b)7(C) C-1)

This employer's managers, at various times, engaged in a practice known as "plussing". "Plussing" occurs when either a quantity larger than originally ordered, or a product not

ordered, is placed in the inventory of Independent Distributors. This action was taken by employees of Flowers Baking Co. of Villa Rica, LLC without prior request of Independent Distributors, and often over their objections. (See [redacted] Ex. (b)7(C) and D-29 letter of 1/30/17)

Flowers Baking Co. of Villa Rica, LLC maintained a right of first refusal regarding any potential sale of a distributorship by an Independent Distributor who signed a Distributorship Agreement prior to 2015. The company also imposed a 5% fee on any transfer of ownership between third parties. These agreements also included a covenant not to compete. (See exhibit D-29 (January 30th, 2017 memo))

However, Flowers Baking Co. of Villa Rica, LLC did not require that Independent Distributors wear uniforms, begin or end work at a set time, control the order in which customers were visited, purchase or use any specific vehicle, or screen workers hired by Independent Distributors.

A great deal of control is exerted on these Independent Distributors in an indirect manner through Flowers Baking Co. of Villa Rica, LLC's customers. Contracts with all "National Accounts" ([redacted] Ex. (b)(4) are negotiated by Flowers Baking Co. of Villa Rica, LLC (or Flowers Foods, Inc). These contracts place requirements on Independent Distributors. These contracts dictate to Independent Distributors the types of products to be delivered, the minimum quantity of each product to be delivered, the number of times per week each account must be serviced, the time of day in which the account must be serviced, the exact place on each shelf where products must be delivered, and the maximum amount each customer will pay for delivered products.

Due to the combined effects of this direct and indirect control, Independent Distributors have very little discretion and independent judgment regarding how to perform their work. They have some discretion as to when to begin work in the morning, what type of vehicle to use, in what order to service accounts, whether to hire other workers, whether to solicit business from single location "mom and pop" accounts, and whether to lower the price at which they sell their products to customers. Virtually all other aspects of the day to day work performed by these Independent Distributors are either controlled directly by Flowers Baking Co. of Villa Rica, LLC, or indirectly by the requirements of the contract between Flowers and their customer.

Because of the high degree of control exerted over the work performed by these Independent Distributors (both directly and indirectly), this factor tilts heavily in favor of these Independent distributors being economically dependent on this employer and, thus, being employees.

After applying the Economic Realities test, it is clear that these Independent Distributors are, in fact, employees of this enterprise.

## EXEMPTIONS

Flowers Foods - Corporate Case ID: 1797727

Section 13(b)1: Applicable

Flowers Baking Co. of Villa Rica, LLC's position is that all individuals working as Sales Representatives, Potential Distributors, and Independent Distributors are exempt from overtime under the Section 13(b)1 Motor Carrier Exemption.   This exemption is applicable and these employees are exempt from overtime.

These individuals are employees of Motor Private Carriers.   They drive vehicles with a gross vehicle weight in excess of 10,001 lbs.   While the transportation involved in these drivers' duties is not in interstate commerce, and it does not connect with an interstate terminal, it does continue an interstate journey of goods that have not come to rest at a final destination. Some of the goods these drivers are transporting originated outside of the state of Georgia.   For example, Mike's Killer Bread is only baked in Tuscaloosa, Alabama.   Tastycake products are only baked in Philadelphia, Pennsylvania.   These drivers deliver these products to customer locations in the state of Georgia. These goods are baked in response to orders placed by these individuals through handheld computers.   This ordering usually begins at the customer's location and is transmitted through this enterprise's computer system to bakeries in states across the country.   These bakeries then generate these orders, bake these goods, and ship these goods to distribution warehouses around the country.   These goods typically stay at these distribution warehouses a very short period of time.   These workers then pick these goods up at the distribution warehouse, drive them to their ultimate destination at the customer's location, and deliver them.   These goods do not come to rest for interstate commerce purposes until they have reached the customer's location.

Positions exempt under section 213(b)1 include Sales Representatives, Potential Distributors, and Independent Distributors. (See ▄▄▄▄▄ Ex. (b)7(C) ▄▄▄▄▄

Section 13(a)1: Not Applicable

This employer asserts that individuals working as Sales Representatives, Potential Distributors, and Independent Distributors are exempt from minimum wage, overtime, and the recordkeeping requirements of the act because they qualify for the "Outside Sales" exemption codified in 29 CFR 541.500. This exemption is not applicable.

Individuals working in these positions are customarily and regularly engaged away from the employer's place or places of business.   However, their primary duty is not "making sales" or "obtaining orders or contracts for services or for the use of facilities" as required by §541.500(a)(1).   Interview statements reveal that the primary duties of these individuals are to drive vehicles from distribution warehouses to customer locations, to deliver products, to rotate stock, and to retrieve out of date products to return to the distribution warehouse. (See exhibits Ex. (b)6, Ex. (b)7(C) )   The primary duties of these workers most closely align with those codified in 29 CFR 541.504(d)(2) and 29 CFR 541.504(d)(3).   The regulations specify that drivers with these primary duties do not qualify for the "Outside Sales" exemption.

Page 8

## STATUS OF COMPLIANCE

Ex. (b)7(E)

History: This is the first investigation of Flowers Baking Co. of Villa Rica, LLC.

Section 206: Minimum wage violations were likely present during the period of investigation. Numerous Independent Distributors incurred substantial vehicle related expenses at various times throughout the period of investigation. (See Ex. (b)7(C) It is likely that at least some of these expenses constituted deductions which resulted in the Independent Distributors' regular rate dropping below minimum wage in the workweek in which it occurred. However, specific and sufficient evidence was not obtained during the course of this investigation to allow for citing these incidents as minimum wage violations in WHISARD. Therefore, no section 206 violations were cited, and no back wages were computed in this case.

Section 207: No overtime violations were present during the period of investigation. Evidence was provided that most, if not all, employees working as Sales Representatives, Potential Distributors, or Independent Distributors were exempt from overtime under the section 213(b)1 Motor Carrier exemption. (See Ex. (b)7(C)

Section 211: Record keeping violations were present in this case stemming from this employer's failure to maintain accurate time records for all non-exempt employees. Since this employer considered all Independent Distributors to be independent contractors rather than employees, they did not maintain any time records for these individuals during the period of investigation.

Section 212: No employment of minors was observed, found in employment records, or indicated via employee interviews during the investigative period. (See Ex. (b)7(C)

## DISPOSITION

A final conference was held at the offices of Ogletree Deakins in Atlanta on July 11th, 2017. In attendance were Ex. (b)7(C), WHI Ex. (b)7(C), Al Robinson (outside counsel) Garner Sanford (outside counsel), Kevin Hishta (outside counsel), Stephanie Tillman (Vice President, Chief Compliance Officer, and Deputy General Counsel), and Steven Moulds (Associate General Counsel). WHI Ex. (b)7(C) and WHI Ex. (b)7(C) reviewed the requirements of the FLSA including record keeping; hours worked, minimum wage, overtime, the §541 exemptions, child labor and CMPs.

Flowers Foods - Corporate Case ID: 1797727

WHI Ex. (b)7(C) and WHI Ex. (b)7(C) provided a detailed discussion of the evidence found regarding the employment relationship between Independent Distributors and Flowers Foods. This included detailed explanations of each factor in the employment relationship test and the applicable evidence found during the course of the investigation. WHI Ex. (b)7(C) explained that the findings of this investigation were that these Independent Distributors were, in fact, employees of Flowers foods. WHI Ex. (b)7(C) further explained that the section 213(b)1 Motor Carrier Exemption was applicable to many of these individuals, but that the Outside Sales Exemption was not applicable. Neither this employer, nor its representatives, offered explanation or clarification of its position during the final conference other than to say that they understood the position of the Department of Labor.

Regarding the possible Section 206 Minimum Wage Violation: WHI Ex. (b)7(C) explained that it is very likely that the large expenses incurred by Independent Distributors resulted in minimum wage violations in the workweeks in which they occurred. Rather than agreeing to comply and insuring that all Independent Distributors received at least minimum wage for all hours worked, this employer's outside counsel requested time to provide the Department of Labor with a detailed written position statement outlining the changes this employer had either already made, or would agree to make to its operating model relating to this issue. Since this employer would not agree to comply at the final conference, no discussion of possible back wages owed was held.

Regarding the Section 211 Recordkeeping Violation: After being advised by WHI Ex. (b)7(C) that failing to keep and maintain accurate time records constituted a violation of section 211, this employer's representatives again asked to be given time to provide a detailed written position statement outlining the changes they were willing to make regarding recordkeeping. No representative of this employer stated that this employer was willing to comply with the requirements of this section.

Ex. (b)7(E) A Handy Reference Guide was provided to the employer at the initial conference.

Publications furnished to the employer: Fact Sheets #16, #17B, #21, #22, #23, #43, #28D and, #44, CL 101, 29 CFR 578, and the HRG.

On September 1st, 2017, outside counsel for Flowers Foods provided the company's position statement explaining in detail the changes it had made, and those it would agree to make, regarding compliance under the Fair Labor Standards Act. (See exhibit D-31) This document again reiterates this employer's position that these Independent Distributors are not employees. The changes this employer is willing to make are not sufficient comply with the requirements of section 206 or 211 of the Act. Flowers does not agree to insure that all Independent Distributors are compensated at least minimum wage for all hours worked. Further, they do not agree to keep all records as required under section 516 (including time

records). Therefore, this final position statement has the effect of being a refusal to comply with sections 206 and 211 of the Fair Labor Standards Act.

Correspondence should be mailed to:

Alfred B. Robinson
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
1909 K Street, N.W., Suite 1000
Washington, DC 20006
202-263-0269

Ex. (b)7(E) This is the first investigation of this enterprise and there is no other evidence of repeat violations. Further, there is little evidence that these violations were willful. It is the contention of this employer that they are operating in compliance with the law and have been during the entire period of investigation.

Recommendation: This firm currently refuses to comply with the requirements of the Act. I recommend this case be closed administratively.

Ex. (b)7(C)
WH Investigator
December 20th, 2017