**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **JOSEPH ASH, ET AL** | **CIVIL DOCKET NO. 1:21-CV-03566** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **FLOWERS FOODS, INC., ET AL** | **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES** |

### MEMORANDUM RULING

Before the Court are three MOTIONS FOR SUMMARY JUDGMENT (collectively, the "Motions") filed by Defendants, Flowers Foods, Inc. and Flowers Baking Company of Baton Rouge, LLC ("Defendants"). [Docs. 33, 34, 35]. The Motions seek dismissal of all claims asserted by Plaintiffs, Joseph Ash, Justin Bolton, and Matthew Crawford (collectively, "Plaintiffs"). After careful consideration, and for the reasons set forth below, the Court GRANTS the Motions and enters judgment in favor of Defendants.

### BACKGROUND

Defendants are companies that produce and sell wholesale baked goods to large retailers and grocery chains throughout the country. [Doc. 1, ¶¶ 1, 22]; [Doc. 12, ¶¶ 1, 8, 22]. To get their products to market in Louisiana, Defendants transport their breadstuffs in bulk shipments from out-of-state bakeries to several Louisiana warehouses. [Doc. 12, ¶ 13]; [Doc. 41-1, ¶¶ 5–7]; [Doc. 41-2, ¶ 3]. Deliverymen then unpack the shipments, re-package the goods into individualized parcels, and drive the re-packaged breadstuffs to Defendants' retail customers. [Doc. 12, ¶ 119].

Plaintiffs are three deliverymen formerly employed by Defendants.[1] The record indicates that all three Plaintiffs performed identical job functions. The undisputed terms of Plaintiffs' business relationship with Defendants were as follows:

(i) Each Plaintiff was provided a "route" that consisted of grocery stores and retail outlets in a specific geographic area. [Doc. 34-3, p. 3]; [Doc. 33-3, p. 200]; [Doc. 33-1, p. 15]. Plaintiffs were charged with separating, packing, and delivering breadstuffs from Defendants' warehouses to each customer along their assigned route.[2] [Doc. 33-2, ¶ 30]; [Doc. 40-1, p. 6]. Plaintiffs' delivery duties did not require interstate travel.[3] [Doc. 39-1, p. 8]; [Doc. 34-2, ¶¶ 17–28].

(ii) In between deliveries, Plaintiffs were responsible for "plac[ing] product on store shelves, rotat[ing] product, pull[ing] out-of-code product, and set[ting] up displays." [Doc. 12, ¶¶ 27, 57]. Plaintiffs were also expected to keep the Defendants informed of the

---

[1] Although Defendants maintain that there is a genuine dispute of material fact as to whether Plaintiffs were "independent contractors," rather than employees, *see* [Doc. 12, ¶ 130], Defendants' Motions for Summary Judgment assume that Plaintiffs are determined to be employees for purposes of the Fair Labor Standards Act. *See generally* [Docs. 33, 34, 35]. Accordingly, and strictly for the purpose of ruling on these Motions, the Court accepts that Plaintiffs were Defendants' employees.

[2] Defendants claim that Plaintiffs "took title to [the] products [at Defendants' warehouse], and thereafter [] sold them to [customers] in [their] territory," passing title to the customer when the products were delivered. [Doc. 33-1, pp. 8–9]; [Doc. 34-1, pp. 8–9]. Plaintiffs, however, maintain that this transfer was merely a form of consignment and that ownership of the goods therefore remained with Defendants. *See* [Doc. 41, p. 12]; [Doc. 40, p. 12]; *see also Consign,* BLACK'S LAW DICTIONARY (11th ed. 2019) ("To give [merchandise] to another to sell, usually with the understanding that the seller will pay the owner for the goods from the proceeds.").

[3] Plaintiffs almost exclusively used a "bread truck" (sometimes equipped with a trailer) to transport products from Defendants' warehouses to the end customer. *See* [Doc. 35-3, pp. 6, 25, 35] (where Mr. Bolton identifies his bread truck as being a 2006 Isuzu van); [Doc. 33-2, pp. 28–29] (where Mr. Ash testifies that he purchased a bread truck because Defendants required deliverymen to own such a truck). However, on occasions when customers unexpectedly ran out of product, Plaintiffs would often use their personal vehicles to perform "call-backs" on those customers, *i.e.,* supplement their normal delivery with additional product. *See* [Doc. 33-2, ¶ 33]; [Doc. 34-3, p. 24]; [Doc. 35-3, p. 26].

       "timing, price point, and display of products for [Defendants'] customers[.]" [Doc. 34-3, pp. 26–30]; [Doc. 41-2, ¶¶ 15–18].

(iii)    Although customers contracted directly with Defendants, Plaintiffs typically determined the quantity of products required by each customer. [Doc. 34-2, ¶ 36]; [Doc. 39-2, ¶ 6]. Plaintiffs calculated the delivery quantity by communicating with the customer directly and by using historical sales data provided to them by the Defendants. [Doc. 34-2, ¶ 27]; [Doc. 33-2, ¶ 29]; [Doc. 39-1, p. 2]. Defendants otherwise maintained control over product pricing. [Doc. 35-1, p. 21]; [Doc. 39-1, p. 3]; [Doc. 40-1, p. 3].

(iv)    Plaintiffs were required to "pull[] previously delivered and stored product from [a] customer's backroom and restock it on the customer's shelves" every Wednesday and Sunday. [Doc. 33-1, p. 10 n.2]; [Doc. 41-3, ¶ 15]; [Doc. 40-2, ¶ 15]; [Doc. 39-4, ¶ 15]. These weekly product rotations were colloquially known as "pull-ups" and generally did not require the use of a bread truck. [Doc. 35-3, p. 29]; [Doc. 33-1, p. 10].

(v)    Finally, Plaintiffs were compensated via commission. [Doc. 33-3, pp. 198–200]; [Doc. 35-3, p. 15]. This commission was reduced by Defendants to account for various business expenses, including warehouse rent, product that went stale before it was sold, and other loss of revenue referred to in the industry as "shrink".[4] [Doc. 33-2, ¶17]; [Doc. 40-1, p. 5]; [Doc. 41-1, p. 5].

All three Plaintiffs participated in a collective action initiated on January 16, 2017, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. *See Richard v. Flowers Foods, Inc.*, 2021 WL 4887978 (W.D. La. Oct. 18, 2021). Although Plaintiffs opted into a class conditionally certified under the FLSA, this Court later decertified that class in response to the Fifth Circuit's ruling in *Swales, et al. v. KLLM*

---

[4]     As described by Plaintiffs, "shrink" is "the unaccounted difference between products … sold to a retailer and sold by retailer." [Doc. 40-1, p. 5]; [Doc. 41-1, p. 5].

*Trans. Serv., LLC*, 985 F.3d 430 (5th Cir. 2021).⁵ *See Richard*, 2021 WL 4887978, at *2 (citing *Swales* and finding that "the evidence presented indicates that adjudication of the merits would 'quickly devolve into a cacophony of individual actions.'").

Plaintiffs filed the instant action on October 10, 2021. [Doc. 1]. Plaintiffs' Complaint named as defendants Flowers Foods, Inc., a Georgia corporation, as well as its wholly owned subsidiary, Flowers Baking Company of Baton Rouge, LLC, a limited liability company formed under the laws of Louisiana. *Id.* at ¶¶ 7–8. Plaintiffs' Complaint seeks, *inter alia*: (i) monetary compensation resulting from Defendants' alleged failure to pay Plaintiffs overtime pursuant to the FLSA; and (ii) "reimbursement of [allegedly] illegal [fines and] deductions" pursuant to the Louisiana Wage Payment Act, La. R.S. § 23:635, *et seq.* ("LWPA").⁶ *See id.* at ¶¶ 1–2.

---

⁵ Plaintiffs also unsuccessfully sought class certification pursuant to the Louisiana Wage Payment Act. *See Richard*, 2021 WL 4887978, at *2.

⁶ Like the FLSA, the LWPA provides a cause of action for unpaid overtime. *See, e.g., Flores v. S. Response Servs. Inc.*, 2022 WL 15524680, at *3 (W.D. La. Oct. 27, 2022); *Awan v. Shawn Enterprises, LLC*, 2022 WL 3009159, at *1 (W.D. La. July 13, 2022), r*eport and recommendation adopted*, 2022 WL 2990711 (W.D. La. July 28, 2022). Here, Plaintiffs have asserted claims for overtime under both the LWPA and the FLSA. *See* [Doc. 1, ¶¶ 161, 163], However, because Plaintiffs have asserted an identical claim for overtime under federal law, Plaintiffs' claim for overtime under the LWPA is preempted by the FLSA. *See Kidder v. Statewide Transp., Inc.,* 2013-594, pp. 6–7 (La. App. 3 Cir. 12/18/13), 129 So. 3d 875, 880; *Taylor v. S. LA Contractors, LLC,* 2022 WL 16570086, at *5 n.4 (W.D. La. Sept. 30, 2022), *report and recommendation adopted*, 2022 WL 16558732 (W.D. La. Oct. 31, 2022); *Vasquez v. Welmer's Constr., LLC*, 2021 WL 2193580, at *5 (M.D. La. Apr. 7, 2021); *Hampton v. McDermott Int'l, Inc.*, 2019 WL 5617025, at *3 (W.D. La. Oct. 30, 2019) (collecting cases and noting that "numerous courts have held that when a plaintiff presents claims for overtime under both statutes, the FLSA claim preempts state law for employees engaged in interstate commerce."); *Bell v. Associated Wholesale Grocers, Inc.*, 2019 WL 1979935, at *2 (E.D. La. May 3, 2019).

Defendants filed the instant Motions on April 3, 2023. [Docs. 33, 34, 35]. The Motions seek dismissal of Plaintiffs' claims, asserting identical arguments with respect to each Plaintiff, namely that: (i) the Motor Carrier's Act ("MCA") exemption, 29 U.S.C. § 213(b)(1), precludes Plaintiffs' claims for overtime under the FLSA; (ii) even if the MCA is inapplicable, the Outside Sales exemption, 29 U.S.C. § 213(a)(1), precludes Plaintiffs' claims for overtime under the FLSA; and (iii) Plaintiffs' state law claims must fail because Plaintiffs have not received a "fine" within the meaning of the LWPA.[7]  *See* [Doc. 33-1, p. 2]; [Doc. 34-1, p. 2]; [Doc. 35, p. 2].  Plaintiffs oppose the Motions.  *See* [Docs. 39, 40, 41].  The Motions are now ripe for ruling.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings in conjunction with affidavits and documentary evidence, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986). In applying this standard, the court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are

---

[7]  Defendants have also argued that Plaintiffs' remaining LWPA are time-barred. *See* [Docs. 33-2, 34-1, 35-1].  However, because the Court agrees with Defendants that Plaintiffs do not assert a cognizable LWPA claim for "illegal deductions," *see infra,* the Court need not decide whether Plaintiffs' LWPA claims are prescribed.

to be drawn in his favor."). The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). If the movant fails to meet this burden, a court must deny the moving party's motion for summary judgment. *Id.*

If the movant satisfies its burden, however, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]" *Id.*

## II. Fair Labor Standards Act

The FLSA provides that employers must pay their employees "one-and-a-half times their normal wages for hours worked in excess of forty [hours] per week." *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013) (citing 29 U.S.C. § 207(a)). Employees falling within one or more of the FLSA's exemptions, however, are not entitled to FLSA overtime pay. *See* 29 U.S.C. § 213. The applicability of one or more of these exemptions is considered an affirmative defense, and the employer therefore bears the burden of "prov[ing] facts by a preponderance of the evidence that show the exemption is plainly and unmistakably applicable." *Id.* at 580–81 (internal

quotations omitted); *see also Amaya v. NOYPI Movers, L.L.C.*, 741 F.App'x 203, 207 (5th Cir. 2018) ("[F]or a defendant to obtain summary judgment on an affirmative defense, it must establish beyond dispute all of the defense's essential elements.") (internal quotations omitted); *but see Carley v. Crest Pumping Techs., L.L.C.,* 890 F.3d 575, 579 (5th Cir. 2018) ("The Supreme Court [has held] that courts are to give FLSA exemptions 'a fair reading,' as opposed to the narrow interpretation previously espoused by this and other circuits."). Here, Defendants argue that they are exempt from the FLSA maximum hour requirements – citing both the MCA exemption, 29 U.S.C. § 213(b), and the Outside Sales exemption, 29 U.S.C. § 213(a)(1). [Doc. 33-1, p. 2]; [Doc. 34-1, p. 2]; [Doc. 35, p. 2].

### A. Motor Carriers Act Exemption

The MCA provides that FLSA overtime is unavailable for "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [49 U.S.C. §] 31502 of Title 49." 29 U.S.C. § 213(b). Section 31502, in turn, empowers the Secretary of Transportation to prescribe "qualifications and maximum hours of service" for employees of "motor carrier[s]" and "motor private carrier[s]." 49 U.S.C. § 31502.

As described by the Fifth Circuit, a plaintiff is employed by a "motor private carrier" within the meaning of Section 31502 if the plaintiff "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or

foreign commerce within the meaning of the MCA."[8] *Amaya v. NOYPI Movers, L.L.C.,* 741 F.App'x 203, 205 (5th Cir. 2018) (citing 29 C.F.R. § 782.2(a) and *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014)); *but see Allen*, 755 F.3d at 284 ("[W]here the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply[.]"). Ultimately, this evaluation must be made from a "class-wide perspective" with an eye towards "what an employee does in the ordinary course of his work." *Amaya*, 741 F.App'x at 206; *see also Rychorcewicz v. Welltec, Inc.,* 768 F.App'x 252, 255 (5th Cir. 2019).

Under the MCA, an employee "affect[s] the safety of operation of motor vehicles" in interstate commerce in two circumstances: (i) when the employee engages in work relating to "the actual transport of goods across state lines;" or (ii) when the employee engages in work relating to the intrastate transport of goods, "[caught] in the flow of interstate commerce." *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014) (citing *Songer v. Dillon Res., Inc.,* 618 F.3d 467, 472 (5th Cir. 2010)).

---

[8] To fall within the scope of Section 31502, a plaintiff must also be employed by a "carrier[] whose transportation of passengers or property by motor vehicle is subject to DOT jurisdiction under section 204 of the MCA[.]" *Rychorcewicz v. Welltec, Inc.,* 768 F.App'x 252 (5th Cir. 2019) (unpublished) (cleaned up); *see also Amaya*, 741 F.App'x at 205 (noting that "29 C.F.R. § 782.2(a) … [provides] qualifications for both the employer and employee."). It is undisputed that Defendants fall within the scope of the MCA. *See generally* [Docs. 33-1, 34-1, 35-1, 39, 40, 41].

In this case, Defendants maintain that Plaintiffs "regularly distributed goods in the stream of interstate commerce within the meaning of the MCA" because Plaintiffs "dr[o]ve wholly intrastate route[s] but delivere[d] products that were produced out of state in response to specific [] projections, or anticipated needs." [Doc. 34-1, p. 15]. In response, Plaintiffs argue that their delivery duties were separate and apart from interstate commerce because Defendants "did not [ship the products] for a specific order from a single customer, or [] a specific product, or in any specific quantity" but instead allocated products in bulk to a given warehouse based on projected customer needs. *See* [Doc. 41, pp. 12–13] (arguing that Plaintiffs did not engage in interstate commerce because Defendants had "no fixed and persistent transportation intent" beyond the warehouses where Plaintiffs would pack and load Defendants' products).

Plaintiffs' argument is unpersuasive.[9] The Fifth Circuit considered a virtually identical fact pattern in *Siller v. L & F Distributors, Ltd.*, 109 F.3d 765 (5th Cir.1997).

---

9   Plaintiffs also maintain that Plaintiffs "[are] not subject to the MCA" because they fall within the purview of an exception provided by Technical Corrections Act ("TCA"). [Doc. 40, pp. 6, 19–20]. This argument is similarly unpersuasive.

The TCA provides that the MCA exemption does not apply to "covered employees" who, among other things, "[drive] motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce." *Rychorcewicz v. Welltec, Inc.*, 768 F.App'x 252, 256 (5th Cir. 2019) (citing Pub. L. No. 110–244). To qualify for the TCA exception, Plaintiffs bear the burden of establishing that: (i) they drove vehicles with a gross vehicle weight rating ("GVWR") of 10,001 pounds or less; and (ii) they used these vehicles more than a *de minimis* amount in interstate or foreign commerce. *Id.* at 256–57; *Carley v. Crest Pumping Techs., L.L.C.,* 890 F.3d 575, 580–83 (5th Cir. 2018). Plaintiffs testified in their depositions that "[a]t certain times, and always for [] pullups and stales/shrinks, [Plaintiffs] used [a] personal vehicle every week." *See* [Doc. 40, p. 20]; [Doc. 39-1, p. 9]; [Doc. 33-3, pp. 31–33, 204–205]; [Doc. 34-3, pp. 148–49]; [Doc. 35-3, pp. 29–31]. Plaintiffs have submitted absolutely no summary judgment evidence, however, as to the GVWR of their respective vehicles. *See generally* [Docs. 39, 40, 41]. Fifth Circuit precedent is clear that

There, as here, the plaintiffs performed strictly intrastate deliveries from defendant's Texas warehouse, but the shipper "ordered products based on [defendant's] sales projections knowing that at least some of [the products] would eventually reach [end customers in] South Texas."[10] *Id.* at *3. The Fifth Circuit concluded that plaintiffs engaged in interstate commerce, explaining:

> [A] fixed and persisting intent … was fixed at the shipment's origin and persisted as the shipment crossed state lines [into Texas]. This intent persevered as [shipper] continued its products in motion after a brief [] stop at its warehouse in Houston …
>
> Essentially, we find that this was a case which involved a shipper whose intent was to move its products continuously from its out-of-state breweries to its in-state retailer-customers, via [defendant], with a temporary stop at its own warehouse to facilitate the interstate movement. Therefore, plaintiffs, as drivers for [defendant], were engaged in interstate commerce [under the MCA].

---

Plaintiffs' failure to introduce evidence regarding the GVWR of their personal vehicles precludes them from invoking the TCA exception to the FLSA's MCA exemption. *See Carley*, 890 F.3d at 582–83 (overturning a jury verdict and rendering judgment for defendant because "Plaintiffs [produced] no legally cognizable evidence of GVWR"); *Rychorcewicz*, 768 F.App'x at 256–57 (affirming summary judgment because plaintiffs' summary judgment evidence "[did not show the actual GVWRs for the vehicles the plaintiffs drove."); *Lockhart v. Republic Servs., Inc.*, 2021 WL 4955241, at *7 (5th Cir. Oct. 25, 2021) (summary judgment proper where plaintiffs "simply [produced] no evidence" as to an essential element of their claim); *Emery v. Medtronic, Inc.*, 793 F. App'x 293, 295 (5th Cir. 2019) (same).

[10]   *Siller* noted that "the totality of all the facts and circumstances eventually determines whether a shipper has the requisite intent to move goods continuously in interstate commerce." *See* 109 F.3d at *2 ("Some [] more relevant [circumstances] include: (1) whether a single shipper has control over both the inbound and outbound movements to and from the warehouse; (2) whether the shipments are made pursuant to specific orders or customer estimates of need which predict how much product will eventually be delivered to each customer; (3) how many customers the storage facility serves; (4) how rapidly the product moves through the storage facility; (5) whether the shipment is made pursuant to a storage-in-transit provision in an appropriate tariff; and (6) whether the product goes through additional processing or manufacture at the storage facility.").

*Id.* Other cases considering similar facts have reached like results. *See, e.g., Central Freight Lines v. I.C.C.*, 899 F.2d 413, 423 (5th Cir.1990) ("[W]e find the ICC did not err in finding that when [defendant] transports goods across state lines to a storage terminal … the subsequent transportation from the terminal to customers is still interstate in character, even though it is within one state."); *Walker Oil Co. v. Hudson Oil Co. of Mo.*, 414 F.2d 588, 590 (5th Cir. 1969) ("[G]oods shipped into a state are considered to remain within the flow [of interstate commerce] … where the goods are purchased by the wholesaler or retailer based on anticipated needs of specific customers, rather than upon prior orders or contracts."); *see also Taylor, on Behalf of Himself v. Brown Bottling Grp.*, 2010 WL 2925688, at *5 (S.D. Miss. June 14, 2010) (finding that "under the totality of the circumstances, it appears that [plaintiff's] in-state distribution of Pepsi products, all of which originated out-of-state, would satisfy the interstate commerce requirement necessary for applying the motor carrier exemption in this case."); *Glanville v. Dupar, Inc.*, 2009 WL 3255292, at *10 (S.D. Tex. Sept. 25, 2009) (collecting cases and noting that "[t]he Fifth Circuit has ruled that intrastate deliveries are considered to be in the stream of interstate commerce if the goods originated out of state and the intrastate portion of the route is merely the final phase of an unmistakably interstate transport.").

In short, it is undisputed that Defendants shipped their breadstuffs to warehouses in Louisiana with the intention that those breadstuffs – without further manufacture or processing – reach Defendants' end customers in Louisiana. It is also undisputed that the bread products were delivered to Defendants' customers shortly

after arriving at the warehouses. *See* [Doc. 39-1, pp. 6–7]; [Doc. 33-2, ¶¶ 24–27]; *see also* [Doc. 33-3, p. 213] (where Mr. Ash confirms that products were delivered "shortly after … arriv[ing] at the warehouse"); [Doc. 34-3, pp. 147–48] (where Mr. Crawford confirms that "once the goods were delivered to the warehouse, shortly thereafter, [he would] deliver[] them to [his] customer[s]"). Fifth Circuit jurisprudence therefore dictates that Plaintiffs were engaged in interstate commerce within the meaning of the MCA.[11] *Siller*, 109 F.3d at *3; *Central Freight*, 899 F.2d at 423; *Walker Oil*, 414 F.2d at 590. Accordingly, the MCA exemption precludes Plaintiffs' claims for overtime under FLSA and summary judgment is appropriate as to Plaintiffs' FLSA claims. Because the Court finds that the MCA precludes Plaintiffs' claims under the

---

[11] The Court notes that the Fifth Circuit's precedent regarding the scope of the MCA exemption to the FLSA may be impacted by recent caselaw requiring courts to apply a "fair reading" to the FLSA's statutory text. *See Encino Motorcars, LLC v. Navarro,* 38 S.Ct. 1134, 1142 (2018) (courts have "no license to give [FLSA] exemption[s] anything but a fair reading."); *see also Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 298 (5th Cir. 2021), *cert. granted*, 142 S.Ct. 2674 (2022), and *aff'd*, 143 S.Ct. 677 (2023) ("Our job is to follow the text[.]"); *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 184 (2004) ("The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (cleaned up). The text of the MCA (as incorporated into the FLSA exemption) defines "interstate commerce" as the transport of "passengers, property, or both" between either "a State and a place in another State" or between "a State and another place in the same State through another State." *See* 49 U.S.C. § 13501; *but see, Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014) (although "[t]he MCA defines interstate commerce as commerce 'between a place in … a State and a place in another State[]' … this definition 'has not been applied literally by the courts. In fact, we have defined it as the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce.' ") (internal citations omitted); *accord*, 29 C.F.R. § 782.7(b)(1). Although the Fifth Circuit may later choose to modify its jurisprudence regarding the scope of the MCA exemption in light of the recent "fair reading" jurisprudence, it has not yet done so. Nor is it clear what effect, if any, any such modification would have on the outcome of this case.

FLSA, the Court need not reach Defendants' arguments regarding the applicability of the Outside Sales exemption to Plaintiffs' employment.

### III. <u>Louisiana Worker's Protection Act</u>

Next, Plaintiffs allege that Defendants violated the LWPA by deducting certain business expenses from Plaintiffs' wages for things such as warehouse rent, administrative fees, "shrink" costs, and "stale" costs. *See* [Doc. 1, ¶ 163]. Defendants, in turn, argue that Plaintiffs' remaining LWPA claims should be dismissed because these deductions do not constitute "fines" within the meaning of the La. R.S. § 23:635.[12] [Doc. 35-1, p. 26].

Louisiana Revised Statutes § 23:635 provides:

No person … shall assess any fines against his employees or deduct any sum as fines from their wages. This Section shall not apply in cases where the employees wil[l]fully or negligently damage goods or works, or in cases where the employees wil[l]fully or negligently damage or break the property of the employer, or in cases where the employee is convicted or has pled guilty to the crime of theft of employer funds, but in such cases the fines shall not exceed the actual damage done.[13]

As is clear from the text, and as the Fifth Circuit has observed, "[a] fine, within the meaning of section 23:635, is a pecuniary penalty imposed for the violation of some law, rule or regulation." *Samson v. Apollo Res., Inc.*, 242 F.3d 629 (5th Cir. 2001) (citing *Brown v. Navarre Chevrolet, Inc.*, 610 So.2d 165, 170 (La. App. 3rd Cir.

---

[12] As noted above, Plaintiffs' claims for overtime pay under the LWPA are preempted by their FLSA claims. *See supra*, n.7.

[13] Because La. R.S. § 23:635 is penal in nature, it must be strictly construed. *See Samson v. Apollo Res., Inc.*, 242 F.3d 629, 637 (5th Cir. 2001) (citing *Hanks v. Shreveport Yellow Cabs*, 187 So. 817, 819 (La. App.1939)); *accord*, *Stoll v. Goodnight Corp.*, 469 So.2d 1072, 1076 (La. Ct. App.1985).

1992) and noting that "[t]he term 'fines' has a very specific and limited meaning."). Accordingly, "not all deductions are prohibited" by La. R.S. § 23:635. *Id.* Rather, the statute penalizes only deductions made *in response to* an employee's "violation of some law, rule or regulation." *Id.* Indeed, even the cases cited by Plaintiff support this appraisal of the term "fines." *See, e.g., Glover v. Diving Servs. Int'l, Inc.,* 577 So.2d 1103, 1107–08 (La. Ct. App. 1991) (wage deductions not "fines" because they were imposed "for the purpose of covering [employer's] loss rather than imposing a punishment"); *Newsom v. Glob. Data Sys., Inc.,* 2012-412, pp. 5–9 (La. App. 3 Cir. 12/12/12); 107 So.3d 781, 786–89, *writ denied,* 2013-0429 (La. 4/5/13); 110 So.3d 595 (collecting cases); *see also Stegall v. Orr Motors of Little Rock, Inc.,* 48,241, p. 9 (La. App. 2 Cir. 6/26/13); 121 So.3d 684, 690, *writ denied,* 2013-2106 (La. 11/22/13); 126 So.3d 486, and *writ denied,* 2013-2107 (La. 11/22/13); 126 So.3d 486, and *writ denied,* 2013-2402 (La. 11/22/13); 126 So.3d 493 (deductions considered "fines" because they were levied in response to "perceived breach of the employer's work rules or policies.").

Here, the undisputed facts indicate that Defendants regularly deducted warehouse rent, administrative fees, shrink costs, and stale costs from Plaintiffs' wages without regard for Plaintiffs' work performance or behavior. *See* [Doc. 40-1, p. 5]; [Doc. 33-2, ¶¶ 14–17]. Because these deductions were not the result of "perceived breach[es] of [Defendants'] work rules or policies," they are not "fines" within the meaning of La. R.S. § 23:635. *Cf. Stegall,* 121 So.3d at 690; *Glover,* 577 So.2d at 1107–08. Accordingly, summary judgment is appropriate as to Plaintiffs' remaining LWPA claims.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendants' MOTIONS FOR SUMMARY JUDGMENT [Docs. 33, 34, 35] are GRANTED.

IT IS FURTHER ORDERED that all Plaintiffs' claims against Defendants are DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 16th day of May 2023.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE